CAREY-HALLIDAY LUMBER COMPANY v. CAIN & HOWE.

1. PRIVATE CORPORATION. *May act without seal. Agency.*

   In making a sale of its personal property, a private corporation may act
   without seal. Agency for the corporation in such case may be proved,
   and authority to act for it implied, as in case of natural persons.

2. SAME. *Bill of sale. Authority of manager. Parol evidence.*

   It is not essential to the validity of a bill of sale of the personal property
   of a private corporation that it should be under seal. And parol evi-
   dence is admissible to show the authority of an agent or manager to .
   execute such an instrument.

3. SALE. *Good faith. Agreement to reconvey. Rights of other creditors.*

   Where a sale is made in good faith to pay or secure a creditor, the fact
   that there is an understanding that the property is to be reconveyed
   when the debt is paid will not invalidate the sale; nor will the fact that
   the purchaser knows there are other creditors, and is anxious to close
   the transaction before they can interfere. So held as against attaching
   creditors in this case, where an absolute bill of sale was given, which
   was not recorded, the purchaser, however, taking immediate possession.

FROM the circuit court of Jefferson county.

HON. W. P. CASSEDY, Judge.

On the fourteenth day of September, 1891, appellees, Cain
& Howe, merchants of Natchez, Miss., sued out an attachment
against the Church Hill Lumber Company, a corporation
under the laws of New York, which had been conducting a
saw-mill business in Jefferson county, Miss., to collect a debt
of $1,523.80. This attachment was levied on certain personal
property situated in Jefferson county, consisting of a saw-
mill, machinery, stock, etc. This property was claimed by
the Carey-Halliday Lumber Company, a corporation under
the laws of the state of Illinois. Claimant's affidavit was
filed, and an issue was made up to try the right of property.
The Church Hill Lumber Company made no defense, and

judgment was entered against it in favor of plaintiffs. Thereupon, the claimant's issue was tried. Among other things, it was shown by plaintiffs' testimony that the saw-mill business of the defendant, Church Hill Lumber Company, was conducted by one T. H. Woodworth as general manager, who had contracted the debt due plaintiffs; that, just before 'suing out the attachment, plaintiffs had received information that the Church Hill Lumber Company had sold out to the Carey-Halliday Lumber Company. One Sullivan was introduced'' as a witness for plaintiffs, and testified substantially as follows: "I was in the employ of the Church Hill Lumber Company. The property in controversy is the same that had been in the possession of this company, which sold out to the Carey-Halliday Lumber Company, September 7, 1891. The purchaser took immediate possession, and I continued the work for the Carey-Halliday Lumber Company. Mr. Gray, who represented the purchaser, went through the books with Mr. Woodworth, and I heard them mention, among the creditors of the Church Hill Lumber Company, the names of Cain & Howe. They went to Vicksburg to prepare the papers, because, Woodworth said, if they went to Natchez some of the creditors would jump on them before they could do this." Question by plaintiff: "Did you have a conversation with Gray, after the sale, in reference thereto?" Answer: "Yes; I did. It was a few days after the sale; the same week. He and I were going from the camp in a buggy to Church Hill, about two miles distant. During that ride, Gray, in speaking about the sale, said, ' We do not want the property; we agreed with Woodworth to deed it back as soon as we got the money.' The Church Hill Lumber Company was indebted to the Carey-Halliday Lumber Company." Question: "Did you have any talk with T. H. Woodworth, the manager of the Church Hill Lumber Company, about the sale?" (Objected to by claimant, unless Gray was present. Objection overruled.) Answer: "Mr. Woodworth talked to me about it in camp. He said the sale was not *bona fide;* it was done

to get rid of the creditors, and, when the Carey-Halliday Lumber Company got its money, the property was to be deeded back. I asked him 'if he had that reserved in the bill of sale. He said no; that he was not to do that, because it would vitiate the sale. He wanted me to ask Gray about it, so that I could be a witness; and I did ask Gray about it, when we were in the buggy together, as aforesaid, and Gray admitted it."

·. This was substantially all the evidence introduced by plaintiffs. Thereupon, the claimant introduced Harry Gray, who testified that, in 1889, he was the agent of the Carey-Halliday Lumber Company, being its secretary and treasurer. Question: "Did you or not, acting for the Carey-Halliday Lumber Company, purchase the property in controversy in this suit? If so, state when and where it was, and all about it." (Counsel for plaintiffs objected to any oral testimony about the sale if it was in writing, and the objection was sustained.) Question by claimant: "Was it in writing?" Answer: "It was." Question: "Examine the paper handed you, and state whether or not it is the original bill of sale of the property in controversy from the Church Hill Lumber Company to the Carey-Halliday Lumber Company." Answer: "It is."

Here claimant offered to introduce a written bill of sale of the property in controversy, and certain land, to the Carey-Halliday Lumber Company, dated September 7, 1891. It recited a consideration of $1,269.50 cash, and the assumption by the purchaser of $1,269.50 due by the seller to employes. It was signed: "The Church Hill Lumber Company, T. H. Woodworth, manager." The instrument was not under seal. It was acknowledged the day of its execution, but had not been placed upon record. Counsel for claimant proposed to put the same in evidence in connection with the testimony of Gray. Plaintiffs objected, on the ground there was no corporate seal attached, and because it did not appear that the sale had been authorized by the Church Hill Lumber Company. Objection sustained, and claimant excepted.

Articles of incorporation of the Church.Hill Lumber Company were introduced in evidence. These recited that the business of the corporation should be managed by a board of directors, or by some one appointed by the board for that purpose. Thereupon, claimant again proposed to offer the testimony of the witness, Gray, to show the sale of the property in controversy, and that claimants continued in possession thereof after September 7, 1891, and also the execution of the bill of sale. Plaintiffs' objection to this testimony was sustained, and claimants excepted. Claimant declined to offer any further testimony, and the court instructed the jury to find for plaintiffs. Verdict and judgment accordingly. Motion for new trial overruled. Claimant appeals. The opinion contains a further statement of the case.

*Boyer & Butler*, for appellant,

Filed a lengthy brief, as to the questions decided by the court making the following points: The contract which the court excluded from the jury contained no evidence of a want of power in the corporation to make the sale. *Prima facie* it was legal. If officers of a corporation exercise a power which presupposes a delegated authority, and corporate acts show that the corporation must have contemplated the existence of such authority, the exercise of power will be deemed rightful. *Railroad Co. v. Bridge Co.*, 131 U. S., 371. See also 38 N. W. Rep., 606; Green's Brice's Ultra Vires, page 40. The contracts of a corporation which, on their face, appear to be within its charter are not to be regarded as unauthorized. There is no presumption that the law has been violated. 2 Cowen (N. Y.), 664; 4 Hill (N. Y.), 442; 19 N. Y., 369; 17 Ga., 574; 5 B. Mon. (Ky.), 129; 14 Ind., 383; 4 Minn., 385; 46 Ala., 98; 3 Met. (Mass.), 133; 51 Fed. Rep., 1. Even where a contract is *ultra vires*, the corporation or its stockholders alone can take advantage of it. 7 N. W. Rep., 695; 54 N. Y. Sup. Ct., 235.

It was manifest error for the court to exclude evidence

showing the authority of Woodworth, the manager, to make the sale. It not only rejected all the evidence offered by the claimant, but actually took the case from the jury by giving an instruction to find for plaintiffs.

*J. J. Whitney* and *Coffey & McRee,* on same side.

*Mayes & Harris,* for appellee.

Sullivan's testimony showed that both parties admitted that there was no sale in fact. This was sufficient, *prima facie,* to sustain the attachment. It then devolved on claimant to show title. The pretended bill of sale which was introduced was not under seal, and it was executed by Woodworth, who was not shown to have authority to sell the corporate property. The act was void.

The charter of the defendant company, which was introduced by claimant, showed that the affairs of the corporation were to be controlled by a board of directors, or by some one appointed by such board; it does not provide for a general manager. It was incumbent on appellant, claiming through the agent, to show his authority.

The court properly excluded the bill of sale and the testimony of Gray, as there was no attempt to show authority to make the sale. Nor was there any attempt to impeach or contradict Sullivan, who testified as to the bad faith of the transaction.

It will be noted that the bill of sale purported to convey all the property of the defendant, including real estate. A seal was essential. Code 1892, § 2437.

The authorities relied on by opposite counsel relate to corporate acts and acts of agents within the apparent scope of authority. They are not applicable here, as there was no attempt to show authority on the part of Woodworth.

This case differs essentially from that of *Flash* v. *Baldwin,* 58 Miss., 593. Here there was an attempted transfer by one who had no right to make it. This was not the act of the corporation.

But, if it be conceded that the act was authorized, the want of good faith invalidated the transaction.

CAMPBELL, C. J., delivered the opinion of the court.

The court erred in excluding the bill of sale and the proposed testimony of the witness, Gray, and in the general instruction for the plaintiffs. It is a mistake to suppose that a corporation may not speak or act except by a seal, or that agency for it may not be proved as for a natural person, or that authority conferred by a corporation may not be implied as in other cases.

Woodworth was the manager of the business of the corporation in this state, its sole representative here, and the person through whom the plaintiffs had become creditors of the corporation for the debt in suit; and, *prima facie,* he had authority to sell the property of the corporation to pay its debts, as he had authority to contract the debt with the plaintiffs.

If the Church Hill Lumber Company owed the appellant, and sold its property to the latter in good faith to pay this debt, there was nothing wrong in the transaction, even if there was an understanding between the agents that the property would be reconveyed when the vendee was fully paid.

The testimony of Sullivan amounts to no more than that he learned from Woodworth and Gray that the sale was to pay a debt, and that the buyer did not desire the property, and would part with it when fully paid for its purchase. It seems probable that the transaction was a legitimate one, and full inquiry should be permitted to learn its true nature. If the one owed the other, and a sale was agreed on for the purpose of paying or securing the creditor, the fact that the creditor was willing to reconvey, when paid, or knew there were other creditors, and was anxious to have the transaction for its security or payment consummated before interference by others, does not cause condemnation of the sale. The

law requires good faith, but it does not pronounce it bad faith for one to look to his own interests, and protect them, requiring only that in doing that he must not do any thing in fraud of other creditors.

*Reversed, and remanded for a new trial.*