# SELLS & CO. ET AL. *v.* ROSEDALE GROCERY & COMMISSION CO. ET AL.

1. CORPORATION. *Debts in excess of capital. Validity. Code* 1892, § 853.

   Section 853, code 1892, making directors of a corporation individually liable for debts contracted in excess of the capital stock, does not affect the validity of such debts or of conveyances by the corporation to secure them.

2. SAME. *Conveyance by unauthorized officer. Ratification. Who may complain.*

   Creditors cannot avoid conveyances by a corporation on the ground that they were not executed by the proper officers, if they are ratified by the directors and the stockholders do not complain.

3. GENERAL ASSIGNMENT. *What constitutes. Distinct conveyances.*

   Where an insolvent sells goods in part payment of a debt, and transfers collaterals and executes a trust-deed on property to secure the balance thereof, and, two days later, executes a general assignment for creditors, and the several transfers are not executed in support of each other, they will not be construed together as constituting a general assignment subject to the provisions of chapter 8, code 1892. *Mayer* v. *McRae*, MS. opinion of this court, book P, 391.

4. INSOLVENT CORPORATION. *Right to dispose of assets. Code* 1892, § 847.

   Section 847, code 1892, providing that on the dissolution of a corporation the debts due to and from it shall not be extinguished, but shall be a charge on its property, does not deprive a corporation of its right, in good faith, to dispose of its property, or create such a trust as affects this right when exercised in good faith.

5. SAME. *Right to prefer creditors.*

   A corporation, though insolvent, may prefer creditors by mortgage, sale or assignment, where there is no fraud. *Arthur* v. *Bank*, 9 Smed. & M., 394.

6. CORPORATIONS HAVING COMMON OFFICERS. *Assignment. Right to prefer each other.*

   In the absence of actual fraud, an insolvent corporation may prefer

a debt due by it to another corporation, though the two have the same president, and some stockholders in common.

From the chancery court of Bolivar county.
Hon. W. R. Trigg, Chancellor.
The opinion sufficiently states the case.

*Fred Clark*, for appellants.

1. The instruments executed by the grocery company were void because not executed by its duly authorized officers, in accordance with its charter and by-laws. It was never contemplated that the corporation would do a losing business, and, therefore, the directors were never authorized to put an end to the life of the corporation. The act of the directors was *ultra vires.* 33 Barb., 89. The same may be said of the action of the credit and executive committee in transferring to the bank all the property of the grocery company, thus destroying that company.

2. The sale to the bank, the assignment of the choses in action, the execution of the trust-deed, and the subsequent execution of the general assignment, must be construed together as one instrument and as constituting a general assignment. The company was hopelessly insolvent, and this was known to its officers and to the officers of the bank. By the assignment the assignee, N. B. Scott, actually got nothing except an equity of redemption. No property was delivered to him under it. In fact, between the two dates, November 30 and December 2, the grocery company did no business. The stockholders were never called together and had no knowledge of what was done, nor was there any meeting of the stockholders to sanction it. It is evident that the directors had no hope of saving the grocery company, but, in all they did, were determined to protect themselves. There is such intimate relation between the several instruments that they form parcels of one scheme and will be construed as one transaction. *Selleck* v. *Pollock*, 69 Miss., 870; *Polk* v. *Polk*, 40 *Ib.*, 516; Burrill on Assignments, § 128;

34 Am. St. R., 774; 120 Ill., 228; 129 U. S., 329.   Assignment laws are construed liberally in favor of creditors.   52 Ill., 260; 129 U. S., 329.   I admit that a debtor is not bound to succumb to temporary reverses, and may, in good faith, use his property as he chooses to avoid the necessity for making a general assignment.   Transactions of this kind often take place in the ordinary course of business, but when an insolvent debtor knows he can no longer go on in business and determines to yield the dominion of his entire estate, and, in the execution of that purpose, transfers substantially all his property to his creditors, no matter what the form of instrument by which his purpose is carried out, it will be held to operate as an assignment.   19 Fed. R., 70; 14 *Ib.*, 160; 22 *Ib.*, 693; 26 *Ib.*, 812.   See, also, 42 Me., 445; 30 Ala., 193; 22 Pick., 269; 26 Vt., 471; 59 Iowa, 142; 8 Rob. (La.), 302.

These transactions would be unfair and unjust even if we had no statutes upon the subject, but, by § 853, code 1892, the directors who contracted the debts in question are individually liable for the excess of debts over the capital stock.   The bank of Rosedale knew that this excess had been contracted and was itself a creditor to the extent of $15,000 in excess of the capital stock.   On this subject see 8 Am. St. R., 88; 27 Fed. R., 261; 53 *Ib.*, 678.

There was, as a result of the transactions, a reservation of a benefit to the assignors themselves.   True, the assets were not transferred to them as individuals, but, through their interest in the bank, they got the full benefit of them.   They will not be permitted to accomplish indirectly what they could not do directly.

3.  The assignment, which was made up of these several instruments, was void because it indirectly preferred the directors and officers of the grocery company.   I do not contend that an insolvent corporation in this state cannot make a preferential assignment, but, when it is insolvent and cannot go on in business, and is compelled to surrender all its assets, it cannot

do any act to give its own officers an unconscionable preference over its creditors. Its assets, upon insolvency, become a trust-fund for creditors. See *Wood* v. *Drummer*, 3 Mason, 308; Wait on Insolvent Corp., §§ 142, 144, 145. To the same effect is Morawetz on Private Corporations. Our courts have universally held that no trustee should be allowed to deal with the trust fund for his own benefit. See, also, *Robins* v. *Embry*, 1 Smed. & M. Ch., 207; *Sawyer* v. *Hoag*, 17 Wall., 610.

Section 847, code 1892, provides that, on the dissolution of a corporation, its assets shall be vested in the stockholders as tenants in common, but that its debts shall not be extinguished, but shall be a charge upon its property. Section 852 prohibits the diversion or withdrawal of the capital of any corporation for any purpose when the company is insolvent, on penalty of personal liability of the directors or stockholders. It seems a necessary construction of these sections, and of § 853, that the entire assets of an insolvent corporation are a trust-fund for creditors. This being true, the directors cannot exercise the powers given to them, for their personal advantage. 2 Black, 720; 7 Wall., 299; 1 Holmes, 433; 5 Sawy., 417; 43 N. H., 263; 25 Fed. Rep., 586. I invite especial attention to the language of Justice Woods in 44 Fed. Rep., 231, and in 25 Fed. Rep., 577. See, also, 2 Story on Eq. Jur., §§ 1252, 1261; 45 Fed. Rep., 7, a case almost exactly like this. See, also, 23 Mo., 132; 93 *Ib.*, 503; *Cory* v. *Wadsworth*, 11 So. Rep. (Ala.), 350. Even in those courts which hold to the right of an insolvent corporation to prefer debts in which its officers are interested, it is declared that the courts will look with the utmost scrutiny to the fairness of the deed. On the general proposition, see *Lyons Hardware Co.* v. *Manufacturing Co.*, 86 Texas, 143; 35 Pac. Rep., 854; *Sutton Mfg. Co.* v. *Hutchinson*, 63 Fed. Rep., 497.

*Sillers & Owen*, on the same side.

1. The credit and executive committee of the grocery com-

pany exceeded its authority in making the sale, deed of trust
and the assignment.    The committee was created to manage the
business of the firm, not to dispose of its assets and suspend
business.

2.  The trust-deed, the transfer of collaterals, the sale of the
stock, followed by the assignment, are all one transaction, made
with intent to evade the assignment laws of the state, and must
be dealt with as a general assignment that attempted a prefer-
ence to the Bank of Rosedale.    This being true, the preference
is void under chapter 8, code 1892.

3.  The assignment is fraudulent in law and in fact because
it indirectly prefers the directors of the grocery company.    Its
assets, upon insolvency, became a trust-fund for creditors, to
be administered fairly and impartially.    When the assignment
was made, the grocery company had surrendered the dominion
of all its property, and was practically out of existence; with
no goods to do business with, and no house to do business in,
it had only a nominal existence.    On the thirtieth of November
the company was insolvent, and its president called a meeting
of the credit and executive committee, composed of himself and
two brothers, and suggested that they assign, mortgage and sell
out to the Bank of Rosedale, a proposition that was heartily
agreed to and immediately carried out.    The directors lost sight
of all their creditors except one, and, in their efforts to save the
bank, left all other creditors to their fate.    The motive for this
is found in the fact that, by giving this preference, the officers
of the grocery company were the beneficiaries.    The authori-
ties, both state and federal, quoted, are all to the effect that
the transactions that wind up an insolvent concern and put it
out of existence constitute an assignment.    The intention to
voluntarily surrender the dominion of its property is the cri-
terion.    120 Ill., 128; 129 U. S., 329; *Selleck* v. *Pollock*, 69
Miss., 870.

4.  The directors of an insolvent corporation are trustees for
stockholders and creditors.    25 Fed. Rep., 586; 3 *Ib.*, 435;

45 *Ib.*, 7; 8 Am. St. R., 88; 1 Smed. & M. Ch., 207.    The distinction between this case and the case of *Arthur* v. *Bank* is, that in the latter the bank continued in business, retaining the dominion of its property, while here the grocery company surrendered the dominion of its property.    See, also, Am. St. R., 615; 37 *Ib.*, 621; 11 So. Rep., 350; 27 S. W. Rep., 100.

*Skinner & Lewenthall*, on the same side.

The real question in the case is whether the directors in the grocery company, interested as they were, could execute the transfers whereby the bank became paid, or secured, to the exclusion of other creditors.    None of the participants are charged with any actual fraudulent intention.    The transfers are void because of public policy, which condemns a contract made by one who acts for himself, and, at the same time, is agent for another.    21 Wall., 183; 1 Story's Eq. Jur., § 258. The bank obtained the sole preference, and the stockholders an unquestionable benefit, and in this, Charles Scott, the president of the grocery company, largely shared.    Such transactions by a trustee are always voidable.    *Cory* v. *Wadsworth*, 11 So. Rep., 350.    The authorities preponderate on the negative side of the proposition that an insolvent corporation can prefer its directors or officers.    To countenance such preference is to offer new inducements to corporations, as it gives the members of corporations an advantage over their creditors which they cannot enjoy otherwise.    So long as the corporation is solvent the directors are the primary agents—the trustees of the stockholders; but when it becomes insolvent, a fiduciary relation immediately arises between them and the creditors.    Cook on Stockholders, § 661; 2 Morawetz on Cor., § 787; 1 Beach on Cor., § 241; 16 R. I., 597; 130 Ill., 162; 4 Cliff., 375; 91 Ga., 624; *Bradley* v. *Farwell*, Holmes R., 433; *Sutton* v. *Hutchinson*, 63 Fed. Rep., 496; 38 N. E. Rep., 1017; 93 Mo., 503; 26 S. W. Rep., 710; 86 Tex., 143.

*Chas. & A. Y. Scott*, for appellees.

There are two separate and distinct transactions sought to be annulled by appellants. (1) The transfers of November 30, and (2) the assignment of December 2, 1892. It is contended that the right to make these transfers did not exist under the company's charter. It is a mistake both of fact and law. The assets of a corporation are subject to its debts, and can be absorbed by creditors, and courts, if need be, will force them to be so applied. Burrill on Assignments, § 464. Even a public corporation can mortgage all of its property under a general power to acquire, alien or dispose of the same. *McAllister* v. *Plant*, 54 Miss., 106. The right to pay or secure a debt goes hand in hand with the right to make it. It is contended that the contracts and conveyances are void because neither the executive and credit committee nor the directors could make them. This is not tenable. Even without such authority or ratification of the directors, the committee had full power in this respect. See Burrill on Assignments, 102; 4 Am. & Eng. Enc. L., 238; *Lumber Co.* v. *Cain*, 70 Miss., 628. The conveyance was made pursuant to a resolution of the directors. It was not necessary to give notice to the stockholders, but, as a matter of fact, a majority of them knew of and joined in the conveyance. None of them have complained, but they have affirmatively ratified the conveyance. See Burrill on Assignments, 102; 17 Am. & Eng. Enc. L., 124, note; 51 N. W. Rep., 706. The sale and the transfer of November 30 are not void, because the two corporations had a president and some of the directors in common. The record in this case shows affirmatively the *bona fides* of the transactions. The credit and executive committee had full power and authority, without the directors, to make the sale and transfers. A majority of the acting quorum of directors were not interested in the bank in any way. Under such circumstances, there is no respectable authority which would condemn the contract. Even if the directors of one corporation are members of the board of directors of the other

corporation, a contract between them is not void.    14 Mo. App., 13; 52 Fed. Rep., 543; 34 N. W. Rep., 469; Taylor on Private Cor., §§ 642 to 644.    Corporations can deal with corporations and stockholders as with other persons.    *McNamee* v. *Relf*, 52 Miss., 426.    The preference of the bank is not invalid because Chas. Scott, the president of the grocery company, was indorser for the bank on some of its notes.    He was not liable to the bank, but was merely an accommodation indorser for it, and the bank was amply able to protect the notes. He was not an indorser for the Rosedale Grocery Company on any indebtedness to the bank.    Appellants rest on the proposition of law that, if the same person is president of two corporations, or, if any of the directors are the same, there can be no dealing between the two looking to the security of a debt due to one by the other.    This proposition is based neither on reason nor authority, and, to so hold would strike a fatal blow to the development of the state.    Tnere are a few enterprising men in every village and town who foster and promote its growth and development by taking stock in almost every corporation that promises successful employment to workingmen and a fair return on the investment.    As a rule, these men are stockholders and officers of banks, and, without assistance from the banks, the plants could not, in many cases, be successfully operated.    It would be disastrous to say that security could not be given fairly for a debt of this kind to a corporation.    See 52 Fed. Rep., 684.    We refer especially to the case of *Buell* v. *Buckingham*, 16 Iowa, 284.    See, also, 20 Vt.; 425; 2 Morawetz on Priv. Cor., 802; 34 N. W. Rep., 468; 80 Iowa, 380; 70 *Ib.*, 697; 41 La. Ann., 1120; 13 Metc., 497; 21 Pick., 236.

The proposition that the assets of an insolvent corporation are a trust-fund for creditors is fallacious.    They are a trust-fund in one sense only—they must be applied to the debts of the corporation, but, in making such application, the same latitude must be given to the corporations as to the individuals of a partnership.    *Ex parte Conway*, 4 Ark., 302; 13 *Ib.*, 563.

The established rule in that state is in harmony with the general, though not quite uniform, current of authorities in this country. 2 Morawetz on Cor., 802; 45 Fed. R., 148; 38 Mich., 363; 94 N. Y., 168; 5 Watts & S., 223; 11 Vt., 390; 20 *Ib.*, 426; 16 N. J. Eq., 229; 41 *Ib.*, 635; 88 N. Y., 1; 106 Ill., 439; 56 Iowa, 178; 47 Conn., 47; 60 Penn. St., 314. The cases holding a contrary doctrine are based on the theory that the insolvency of a corporation dissolves it and makes its directors trustees to distribute its assets *pro rata* among creditors. The requirement as to the payment of debts is satisfied whenever the property of a corporation is applied to the payment of any of its *bona fide* debts. The corporation, whether solvent or insolvent, may make preferences. See, in addition to the foregoing authorities, *Fogg* v. *Blair*, 133 U. S., 534; *Hollins* v. *Brierfield*, 150 U. S., 371; *Robins* v. *Embry*, 1 Smed. & M. (Ch.), 207. This last case was reviewed and overruled by *Arthur* v. *Bank*, 9 Smed. & M., 394, which has been cited and approved in many subsequent cases. See 54 Miss., 119; 59 *Ib.*, 91; *Palmer* v. *Hutchinson* (Miss.), 11 So. Rep., 789.

The contention that, because practically all the assets were conveyed, the transactions constitute a general assignment, and that the preferences are void under chapter 8, code 1892, cannot be maintained. Such a doctrine exists only in states where preferences are forbidden by statute. See *May* v. *Tenney*, 148 U. S., 60. Great indulgence is shown to special and particular arrangements whereby a debtor secures his creditor. *Selleck* v. *Pollock*, 69 Miss., 870. The transactions of November 30 and December 2 are entirely separate. Why should they be construed together? Each is plain and free from ambiguity. They are entirely dissimilar in character and have nothing in common. The proof is that, on November 30, none of the officers or directors of the grocery company contemplated an assignment. Whether the separate instruments are to be construed together depends upon their character, the circumstances of the case, and the intent of the parties. *Estes* v. *Gunter*, 122

U. S., 450; *Taylor* v. *Watkins* (Miss.), 13 So. Rep., 811. We can only look to the instrument to determine its character. *Jones* v. *McQuien,* 71 Miss., 98; 136 U. S., 233; 138 *Ib.*, 109.

*Mayes & Harris,* on the same side.

1. The right of an insolvent corporation to give a preference is settled by *Arthur* v. *Bank,* 9 Smed. & M., 394. That decision is correct, and it is sustained by an overwhelming weight of authorities.

2. The deeds will not be construed together as forming a general assignment. The contention of appellants, in this regard, is drawn from Burrill on Assignments, § 128, which announces the rule that a general assignment may be made either by one instrument or by several conveying several portions of the assignor's property, respectively. The cases cited by Mr. Burrill show it is not true that there exists any rule of legal construction by which all instruments, through which an insolvent debtor divests himself of his property at or near the same period of time, are to be read together as constituting one instrument. It must be borne in mind that the question of voluntary assignments for creditors has been very much legislated upon in the different states, and a critical review of the cases must necessarily be made with a careful and scrutinizing eye to this fact. Again, where the cases are controlled by statute, the statutes are very diverse in character, and seek to accomplish very different results and attach very different consequences to their violation. It must be borne in mind that the Bank of Rosedale is a *bona fide* purchaser for value, and entitled to protection on that ground. The bill of sale of its stock of goods extinguished its debt to the amount of their value. (Counsel here reviewed and discussed at great length all the cases cited by Burrill in his text, in support of the proposition above stated, and pointed out where many of them differed from the case at bar, and all fell short of being authority in support of appellant's position.) In support of our contention that the instruments

do not together constitute a general assignment, see *Estes* v. *Gunter*, 122 U. S., 450; *May* v. *Tenney*, 148 *Ib.*, 60; 16 Ind., 101; 10 Conn., 280. . The foregoing are cases uncontrolled by any statute.    See, also, 63 Iowa, 25; 23 Fed. Rep., 525; 55 Mich., 64; 59 N. W. Rep. (N. Dak.), 1062; 15. Neb., 531; 32 Kan., 73; 82 Ga., 1; 77 Wis., 199; 85 Mich., 265; 53 Ark., 151; 110 Penn. St. R., 156; 3 Fed. Rep., 719; 142 U. S., 632. *Selleck* v. *Pollock*, 69 Miss., 870, does not conflict with the position we contend for.    The position of counsel for appellant, however, that a conveyance of all the assignor's property makes a general assignment, regardless of the form of the instrument, is directly opposed to *Jones* v. *McQuien*, 71 Miss., 98.

3. Is the transfer void because one of the three directors who made it was also a director of the bank, and one of the three directors was at the same time president of both concerns and a stockholder in each?    It is well settled that such a complication does not avoid the transfer.    Even where a graver complication than this has avoided a contract, it will not be avoided at the instance of creditors, but only of stockholders.    In this case the stockholders have not complained, but have ratified the transactions.    The general proposition that the payment or security of a corporate debt, even by an insolvent corporation, is not fraudulent merely because directors of the insolvent corporation had made a preference to themselves, is established by a long list of authorities.    See 78 Va., 736; 70 Iowa, 697, 703; 88 N. Y., 1, 9; 16 Iowa, 284; 20 Vt., 425; 1 Watts, 385; 60 Penn. St., 290; 1 Spears Eq. (S. C.), 545, 562; 47 Conn., 47; 13 Metc., 497; 23 Mo., 483, 527; 90 Mich., 345, 350; 50 Conn., 597; 76 Mich., 634, 636; 41 Ohio St., 552; 52 Fed. Rep., 680, 684; 77 Ill., 226, 230; 106 Ill., 439, 452; 16 N. J. Eq., 229; 69 Mo., 224.    While a good many text-books state the legal proposition to be that the directors of insolvent corporations have no right to prefer themselves out of the corporate assets for their debts honestly due, and that such proposition is sustained by the weight of authority, the fact is, the

reverse of this proposition is true, and some of these adjudications passed upon this very question of the error into which many of the leading text-writers have fallen. Their error seems to have grown out of a misconception that the assets of a corporation constitute a trust-fund. The limitations of this saying are clearly defined in the opinions which we have cited, and in our own state in the case of *Arthur* v. *Bank, supra.* The weight of authority is in favor of the validity of such assignment by way of preference, provided the assignment is honestly made for the purpose of securing an honest debt. The court's attention is called to the fact that this case does not present even the instance of an assignment or conveyance made by directors 'to secure debts which were due to themselves. Even if it be true that they cannot make such conveyance, it does not follow that they cannot secure another corporation having one or more of the same directors.

As to the proposition that if a complaint can be made at all, it must be made by the stockholders, see *Buell* v. *Buckingham*, 16 Iowa, 284; *Ragland* v. *McFall*, 137 Ill., 81; *Worthen* v. *Griffith*, 28 S. W. Rep. (Ark.), 286, 290, 291; *Hollins* v. *Brierfield*, 150 U. S., 371. Some of the cases cited above have sustained preferences in favor of the president of a corporation out of its assets, even when the corporation was insolvent. See cases cited in 1 Watts, 60 Penn. St., 41 Ohio St., 53 Fed. Rep., 16 Iowa. See, also, 41 La. Ann., 1120.

Argued orally by *Fred Clark*, for appellants, and *Charles Scott* and *E. Mayes*, for appellees.

CALHOON, Special J., delivered the opinion of the court.

A number of creditors of the Rosedale Grocery & Commission Company filed their several independent bills against N. B. Scott, its assignee, and the Bank of Rosedale, and, subsequently, filed amended bills, bringing in Geo. S. Zehnder, trustee. Both the grocery company and the bank are corporations.

The bills and amendments charge that the grocery company made an assignment composed of three instruments: One, a bill of sale to the bank, another, a trust-deed to secure the bank, and, another, an assignment to N. B. Scott, assignee, and that all the instruments go to constitute a general assignment. They charge that the assignment was fraudulent and void, because the debt of the bank was contracted outside the scope of the business of the grocery company, as authorized by its charter, and because the parties executing the assignment could not, by law or its charter, validly do so, and because, as a general assignment, with preferences, it did not comply with § 124 of the code, in that it omits schedules, etc., and because the grocery company and bank had the same person as president, who was a large stockholder in both, and several stockholders in one were stockholders in the other; that, when its debts far exceeded its assets, it sold its goods, wares and merchandise, store fixtures, etc., to the bank, and also made a trust-deed to Zehnder, as trustee, of its real estate and certain other of its property, and assigned to the bank its book accounts and a large amount of its choses in action and everything not conveyed to Zehnder in trust; that the grocery company thus placed all it had in the hands of the bank and under its control, and did this not merely to secure the bank, but to prefer it as a creditor, and that the bank took possession of all the property, and an account of everything is called for; that the common president of the company and the bank was a heavy indorser of the company's paper held by the bank; that, having by oversight failed in its deed of trust to provide for any surplus after paying the bank, the grocery company soon after made an assignment to N. B. Scott of all its assets, without preferences, for the benefit of creditors; that its officers and managers, seeing it was insolvent, and wishing to prefer the bank, and fearing a general assignment would not stand the test of the statute, tried to evade it by first selling to the bank all its goods, wares and merchandise, and then by assigning to it its

choses in action, and then by conveying in trust for it all its realty and remaining personalty, and that all was done simultaneously to defeat the statute, and that these acts were done without the knowledge of the stockholders, and constitute a *felo de se* by the grocery company, and were therefore void. And the bills pray answer under oath, and a full accounting and discovery of the assets and moneys collected, etc., and for the annulment of the instruments, and for a first lien, or, if not entitled to that, that all preferences be abrogated, and for general relief. The answers are full, but need not be digested here, as the evidence and the law applicable to it must determine the case.

The charter of the grocery company empowers it to acquire all kinds of property, real and personal, to sell, incumber it and to hypothecate its choses in action to secure its debts. The by-laws provide for a " credit and executive committee," and a meeting of the stockholders organized one with " full and plenary power in the control and management of all the affairs and business of this company of every kind and description." The board of directors ratified the acts done by this committee, the president, secretary and treasurer, the general manager and one other director.

The assignment to N. B. Scott is dated December 2, 1892, and purports to be a general assignment without preferences. On November 30, 1892, two days before the assignment was executed, the company, by its president, general manager, secretary and treasurer and executive committee, sold and delivered to the bank its " entire stock of goods, wares and merchandise of every kind and description owned by us, and now in our brick store," etc., for the consideration of $13,175, in payment of that much of the debt the company owed the bank. This action was approved by the board of directors, which board also approved the agreement of the executive committee made with the bank to secure the balance of the debt to it by a deed of trust. On the same day, November 30, 1892, the company, by its same officers and committee, conveyed to Zehnder, in trust, to secure

the bank the balance of its debt, amounting to $31,808.59, certain land, animals, wagons, etc., on farms, and cotton, etc. The bank was a party to this deed of trust by its cashier, and, as a consideration for it, gave an extension of time until March 1, 1893, for the payment of this balance.

In all the cases begun by original bills, complainants, who were the creditors of the grocery company, moved for, and got, an order of the court consolidating their cases with the assignee's petition case, and providing that their bills should be taken as answers and cross petitions to the petition of the assignee in the matter of his trust. The petition of the assignee conforms to the statute.

The proof is, that on the sale of goods, etc., the bank took possession of them, and that part of the building where they were, and, as soon as the assignee was appointed, rented the store from him at fifty dollars per month. The president of the grocery company, who was also president of the bank, owned more than half the stock of the company, and nearly half the stock of the bank, all but one hundred dollars of the latter of which had been and remained hypothecated by him as collateral to secure his individual debts to the full value of the stock, and this stock stood in the names of his personal creditors on the books of the bank. The president of the two corporations had indorsed for the grocery company very heavily to firms and to banks other than the Bank of Rosedale, and, when the trust-deed was executed, he was deeply involved, and his property and choses in action incumbered and collateralized. He was individual indorser on divers notes of the grocery company to the bank, for the bank's accommodation, to enable the bank to rediscount them at need with other banks, but all this class of paper has been retired by the bank, and it was always able to protect it. At the time of the execution of the sale and trust deed to Zehnder, the grocery company owed about $100,-000, of which it owed about $40,000 to the bank. Its assets nominally exceeded its debts, but the agricultural disasters of

its tributary region had prevented collections and made its further progress in business impossible. No evidence of actual fraud, or fraudulent intention, appears anywhere in the record. The goods, etc., which were sold to the bank were sold for their fair value.

The evidence of the witnesses uncontradicted, is, that, at the time of the execution of the bill of sale and deed of trust, there was no contemplation of making an assignment, and the assignment was first thought of on December 2, 1892, the day on which it was executed, and because the officers saw it was impossible to continue business longer. The large debt to the bank was for borrowed money used by the grocery company in its legitimate business. No objection to any of the proceedings of sale, execution of the deed of trust or the assignment was ever made by any of the stockholders. In the negotiation of the sale and deed of trust the bank was represented by its cashier.

The final decree sustained the instruments, and the creditors appealed.

For the reason that the debts of the grocery company were double the amount of its capital stock, it was insisted in the argument that the conveyances complained of were invalid. This is not sound, even if the question had been presented by the pleadings, which is not the case. The only penalty provided by the statute is to make the directors contracting the debts individually liable for the amount of their excess over the capital stock. Code 1892, § 853. The validity of the debts is not impaired, nor are the creditors interfered with, except to enlarge their rights. They may not only look to the corporation for payment, but also to the directors for the excess of debts over the capital stock.

The position that the conveyances were void because not executed by the proper officers under the charter and by-laws of the company, is equally untenable. If conceded that the proper officers did not execute them, their acts were ratified by the

board of directors, and this is no proceeding of complaint by any stockholder.

The sale of the goods, the transfer of the collaterals to the bank, and the trust-deed to secure it of date November 30, 1892, and the assignment of December 2, 1892, do not, together, form a general assignment for creditors. They were separate and independent transactions. No reason is perceived why the company might not have performed the first three acts to secure the bank with the then purpose of subsequently executing a general assignment without preferences. An individual in a case free from fraud might have done so, and a corporate entity has equal power in this regard. In *Mayer* v. *McRae*, opinion book P, 391, this court held that "where one makes an assignment of part of his estate for the benefit of creditors, intending at the time to convey the remainder of his estate to another creditor in payment of his debt to such other, the assignment and conveyance together do not constitute a general assignment under chapter 8 of the code, nor is the assignment alone such general assignment to be dealt with under the code provisions." We approve and adhere to the principle announced in this decision. All these matters must be governed by the statutes, jurisprudence and policy of the state where the acts are done, and here, wherever two or more instruments are held as one, it has been where one was executed in support of another and had the taint of actual or constructive fraud.

Our statute on assignment does not at all affect the settled policy of the state that a person or corporation, whether solvent or insolvent, may dispose of his own as he sees fit, where he practices no fraud, but with the simple requirement (Code, §124) that, where he makes a general assignment of what he has, or has left, if it makes preferences of creditors, he shall file with it certain schedules, or the preferences shall fail.

The code provision, § 847, that, on the dissolution of a corporation, the "debts due to and from it shall not be extinguished

by its dissolution, but shall be a charge upon its property,'' does not deprive it of the *jus disponendi* of its property, and creates no such trust as interferes with this right, exercised in good faith. The only purpose of this statute was to avoid the common law rule which, on dissolution, abated all suits for or against the corporation, extinguished all debts due to and from it, vested all its personal property in the crown or state, and reverted its real estate to the grantor and his heirs.

On the main question in this case we unhesitatingly approve and adopt the reasoning of that line of decisions holding that an insolvent corporation or individual may prefer creditors by mortgage, sale or assignment in cases untainted by fraud. In *Palmer* v. *Hutchinson Grocery Co.*, opinion book O, p. 193, the language of this court is this: ''Counsel for the appellant concede the correctness of the decree appealed from, if the question involved is to be controlled by prior decisions of this court, but argue that the decision in *Arthur* v. *Commercial Bank*, 9 Smed. & M., 394, in which it was held that an insolvent corporation might make a preferential assignment for creditors, should be now overruled, and the contrary view adopted. We decline to overrule that decision.'' ·

In *Eldridge* v. *Phillipson*, 58 Miss., 270, the right of a debtor in failing circumstances to prefer in good faith is stated to be ''a firmly established rule in the jurisprudence of Mississippi,'' and the decision refers to the numerous cases of our own court of last resort in support of the position. In the same case it is said that this right '' results from the dominion which the owner has over his property. It is a right of his proprietorship.'' This case is quoted from and approved in *Estes* v. *Gunter*, 122 U. S., 450.

There is no reason, in Mississippi, why one corporation should not prefer another corporation, its creditor, because the two had each the same person as president, and had stockholders common to both. To the suggestion that such right would perhaps always eventuate in a preference, the answer comes

that the preferred corporation is its most useful friend in difficulties, for the very reason that they have stockholders in common, and one may prefer his friend or kindred, or even his wife, if he chooses.

In *Richardson* v. *Davis*, 70 Miss., 219, a general assignment was sustained which preferred the debt of a partner who was himself partner, in the eye of the law, as to the creditors, because of no notice to them of his abandonment of his interest in the business.

The cases in the books which are not in accord with our position in the case at bar are generally based on statutes prohibiting preferential assignments altogether.

There is no constructive fraud shown in this record, and no fraud in fact, the debts preferred being manifestly honest and meritorious, and, therefore, the decree of the chancellor is

*Affirmed.*

WOODS, J., being disqualified, took no part in this decision. S. S. Calhoon, Esq., a member of the bar, was, by agreement, selected, and sat in his stead.