JEREMIAH T. FARGASON ET AL. *v.* OXFORD MERCANTILE
COMPANY ET AL.

1. CORPORATIONS.   *Insolvency.   Preferences.*

   An insolvent corporation may in good faith prefer a creditor.

2. SAME.   *Banks.   Loans in violation of charter.*

   The preference by an insolvent debtor of a debt due a bank is not invalid because the bank loaned him a sum in excess of what it was allowed by its charter to lend to a single borrower.

3. SAME. .  *Loans.   Borrower's fraud.*

   The fraudulent use by an insolvent corporation of borrowed money, in which the lender did not participate, will not invalidate its debt for the loan, and such debt may be preferred in good faith.

4. SAME.   *Capital stock.   Payment for.*

   The capital stock of a corporation, the charter not providing otherwise, may be paid for in property at its actual value.

5. SAME.   *Beginning business.   Stock.   Payment for same.*

   That a corporation began business, contrary to the provisions of its charter, before a sufficient amount of its capital stock was paid in, does not invalidate its debts, or deprive it of the right to prefer a *bona fide* creditor.

6. SAME.   *Insufficient number of directors.*

   That a corporation carried on its business, contrary to the provisions of its charter, with an insufficient number of directors, does not invalidate its debts or deprive it of the right to prefer a *bona fide* creditor.

7. SAME.   *Defective organization.   Capital stock not paid.   Knowledge of preferred creditor.*

   Knowledge by a creditor of the insolvency of a corporation debtor, of its defective organization and that its capital stock had not been paid in does not require that he shall cease to do business with it,

78 Miss.—5

or impose on him a duty to warn others selling to it on credit, nor deprive it of the right, in good faith, to prefer such creditor.

8. SAME. *Debts in excess of capital stock.*

That the debts of an insolvent corporation exceed its capital stock does not deprive it of the power to prefer a *bona fide* creditor.

9. SAME. *Creditor. Directors.*

That a creditor of an insolvent corporation induced the stockholders to increase the number of its directors, thereby conforming to the requirement of its charter, in order for it to make a sale of property in payment of his debt, does not invalidate such sale.

10. SAME. *Right of creditor.*

A creditor of an insolvent corporation, if he have an advantage over other creditors because of proximity to the debtor, may use such advantage in securing a *bona fide* preference of his debt.

11. SAME. *Ultra vires acts. Who can complain.*

The state alone can complain of the following *ultra vires* acts of a corporation:

(*a*) The loaning of too much money to one borrower;

(*b*) The beginning of business before a sufficient amount of capital stock is paid; and,

(*c*) The carrying on of business with an insufficient number of directors.

FROM the chancery court of Lafayette county.

HON. JAMES C. LONGSTREET, Chancellor.

Fargason and others, appellants, were the complainants in the court below; the Oxford Mercantile Company and others, appellees, were defendants there. The bill averred that the Oxford Mercantile Company was a partnership, but pretended to be a corporation; that the partners were the individuals made defendants; that while a charter had been granted the mercantile company, organization thereunder had not been legally effected; that the complainants were all creditors of the company and of the persons who were charged to be partners therein. The bill sought to annul a sale made by the company to the Merchants & Planters Bank, a defendant, to subject the property to complainants' debts, and personal de-

crees against the persons averred to be partners in the company (who pretended to be stockholders and officers) for the sums due the respective complainants.

It was shown that by the terms of the charter, business could be begun when forty per centum of its capital stock was paid, but that the parties began business before so much was paid, and it has never been paid; that a number of the pretended stockholders have never paid anything, their stock having been issued to them in payment of debts due them from N. H. Bryant, the principal instigator of the scheme, or as gifts from him; that only $2,500 was paid in for stock before the concern began business; that the pretended corporation, really a partnership, is insolvent, and has been so from the beginning of its business; that the pretended corporation was brought into nominal existence for the purpose of enabling several of its principal stockholders to collect debts from N. H. Bryant, and the other pretended stockholders paid nothing for their stock, and hold the same in trust for Bryant; that the pretended directors, well knowing that the concern was insolvent, contracted debts largely in excess of its paid-in capital stock; that the defendant bank, knowing all the facts, in violation of its own charter loaned the pretended corporation $15,000, an amount in excess of one-fifth of its own capital stock, when by its charter it was not authorized to make such a loan to one borrower, and therefore it was claimed that the debt therefor was void as to the creditors of the borrower; that in December, 1897, the pretended directors of the Oxford Mercantile Company executed to the bank a bill of sale of all of its property in payment of the $15,000 loan; that the company at the time owed $10,000 to complainants and others, in addition to the pretended debt to the bank; that the bank knew of the insolvency of the company, its defective organization and that its capital stock had not been paid in, and owned some of its pretended stock when the bill of sale was executed. The bank is charged with knowledge that the goods conveyed to it by the bill of sale were pur-

chased from complainants, and were not paid for at the date of the bill of sale, and the bill charged that the bank participated in the fraudulent transactions of which complaint is made. The answer disclaimed all fraud and denied all the material allegations of the bill.    Much evidence was adduced.    The court below decreed for defendants, and complainants appealed .to the supreme court.

*J. W. T. Falkner* and *Kimmons & Kimmons*, for appellants.

We contend that the Oxford Mercantile Company was never legally constituted and organized, because of the fact that forty per cent. of its capital stock was never paid in in cash, as the law directs.    It was a corporation only in name, and was in reality organized and carried on for the almost exclusive benefit of its manager, who had no share in it so far as the records of the corporation show.    It ostensibly had a secretary and treasurer, yet all his duties were performed by the manager, and although Welch was claimed for its president, yet he had no knowledge of his election, and never presumed to act as such, or to exercise any of its duties.    There was only one director for more than a year before the concern collapsed, and there were not sufficient stockholders from which to select the others, and the director, who did presume to hold office, exercised none of his duties as such.

This pretended corporation only claimed to have $5,000 capital stock paid in, and of this amount the Merchants' and Farmers' Bank held as collateral security four thousand dollars for about three years before the sale to it.    When the sale was made to the bank there were not sufficient directors, nor stockholders from which to select the directors, to make the sale, and the bank and its attorneys dictating the course of action of the manager, who seemed to be the "whole thing," had sufficient stock given to people who were utterly irresponsible financially, for the purpose of qualifying them as directors, and immediately had them elected for the purpose of selling the entire

assets of the concern to it, the bank.    The bank evidently had
knowledge of all this, for it did business within a stone's throw
of the firm; and yet it advanced to this insolvent, fraudulent
concern, in round numbers, about fifteen thousand dollars, or
three times its capital stock, even conceding that it had all it
claimed to have had paid in.

Under this state of affairs, the pretended corporation, if ever
legally organized (which we deny), was dissolved by the loss of
integral part of its members, and by the fraudulent acts of the
remaining part of its stockholders and the abandonment of its
charter, and being dissolved, or its operation suspended, there
was no one authorized to make a contract of sale.    Especially
is this so in view of the fact that the bank and its officials knew
all about its condition.    Thompsonon Corporations, secs. 6719,
6655, 6658 and note.    And when once its powers or its opera-
tion was suspended the creditors had a lien on all of its assets
which the stockholders could not destroy by sale to the bank.
Code 1892, § 847.

The case at bar is distinguished from the Sells Grocery Co.
case, 72 Miss., 590, for in that case the corporation was regu-
larly organized in good faith, and so carried on in regular or-
der, with its full quota of officers under its charter.    But in
the case at bar the thing that claimed to be a corporation was a
myth; people who claimed to be a corporation, and so held out
for fraudulent purposes, and creditors who shipped their goods
to it dealt with a nonentity, and the bank, aided by the dexterity
and cunning of this phenomenal manager, appropriated their
goods to its own use and should be held to account for them.
Only the directors were authorized to make contracts, as shown
by the provisions of their charter.    2 Cook on Stock and Stock-
holders, sec. 712.    Hence in the absence of directors, Bryant,
the manager, could not legally buy complainant's goods.    4
Thompson on Corp. sec. 4901.

There being no directors, nor sufficient number of stockhold-
ers from which to select them, and the pretended corporation

having been dissolved by a loss of its members, whatever goods were bought were obtained under false pretenses, the manager claiming to represent something which did not exist, and therefore no title to the goods shipped to it passed, these complainants being ignorant of any wrong doing and believing that they were indeed dealing with a *bona fide* corporation. 4 Thompson on Corporations, sec. 4901; *Wilson* v. *Tesson*, 12 Ind., 285; *Life Ass'n* v. *Tasset*, 102 Ill., 315.

Again, it is not within the province of an insolvent corporation to make preferences. It is true that this court, being on that question divided in *Mfg. Co.* v. *Mfg. Co.*, 74 Miss., 290, held to the contrary, but we believe that, at no distant day, that doctrine will be repudiated. At least, we hope that the doctrine there enunciated will not be extended, and that, when a preference is made by an insolvent corporation, the utmost good faith on the part of the preferred creditors must be shown, or the preference will be avoided, and that no creditor who occupies an advantageous position can open the door for fraud on the rights of other creditors, and yet be safe himself. The bank in this case held just such a position. It held four-fifths of the capital stock of the mercantile company, which had no directors. It is true it held it as collateral security, but there was no one interested so much as itself, and it was the power behind the throne—to all practical purposes the corporation itself, the controlling spirit of it. It had more power than if it had been a *bona fide* director, and, occupying such a position, it could not be a preferred creditor. *Love Mfg. Co.* v. *Queen Mfg. Co.*, 74 Miss., 290; 2 Cook on Stock and Stockholders, sec. 662, and notes; 27 Fed. Rep., 625.

Under all the facts in this case, to uphold the sale to the bank would be to allow the bank to make a sale to itself. It owned four-fifths of the capital stock of the concern, and advanced three times that much in cash to it, and then waited till there was $10,000 worth of goods in the house and then forced a sale of all its assets to itself. No one director ever had that

much power directly by virtue of his office.    The bank in this case could, and did, control this defunct corporation as it chose.

Section 853, code 1892, is a limitation on the power of corporations, and people who have knowledge of the facts are bound to act accordingly.    The bank knew the amount of the capital stock of the Oxford Mercantile Company, and, in loaning it more than it knew it could lawfully contract, should not be allowed to collect its debt in excess of $5,000, and should be required to look alone to the directors, who are liable under the law, unless there should be sufficient assets with which to satisfy all demands of the corporation.

*James Stone*, for the appellees.

The testimony is conclusive that the bank's debt was *bona fide;* that all of it was for money advanced to the mercantile company to pay its commercial debts; that the bank purchased only to save its debt; that it did not buy more than enough to pay it; that the sale was absolute, and possession of the property taken at once by the bank.    Every idea of fraud is excluded.

If the mercantile company was not a corporation *de jure* or *de facto*, it was a partnership, every stockholder being a partner, and the sale to the bank was valid, all the stockholders, or partners, having joined in or approved it.    *Mayer* v. *Bernstein*, 69 Miss., 17.    If the company was a corporation, *de jure* or *de facto*, it had the right to prefer creditors.    *Arthur* v. *Bank*, 9 Smed. & M., 394; *Palmer* v. *Grocery Co.*, 11 So. Rep., 789; *Mason* v. *Lumber Co.*, 21 So. Rep., 5; *Carey, etc., Co.* v. *Cain*, 70 Miss., 628; *Sells* v. *Grocery Co.*, 72 Miss., 590; *Love, etc., Co.* v. *Queen, etc., Co.*, 74 Miss., 290; 7 Am. & Eng. Enc. L., 734.

The debt from the mercantile company to the bank is not void or illegal, even if it exceeded in amount the company's capital stock.    Code 1892, § 853, has no such effect.    *Sells* v. *Grocery Co.*, 72 Miss., 590; 7 Am. & Eng. Enc. L., 769.

The contract between the bank and the company was fully executed, and, were it illegal, its execution or satisfaction cannot be avoided. *Crum* v. *Shoe Co.*, 72 Miss., 458; *Cunningham* v. *Loan Association*, 73 Miss., 516.

The following authorities maintain appellee's position on the other points made by appellants' counsel: 1 Lawson's Rights & Rem., sec. 341; Clark on Corporations, 59; *Ib.*, 61; *Hagerstown, etc., Co.* v. *Creeger*, 9 Am. Dec., 495; 1 Thompson on Corporations, 225; *Ib.*, sec. 503; Taylor's Private Corporations, sec. 12; *Ib.*, sec. 145; Beach on Corporations, sec. 12; *Ib.*, sec. 23; *Van Cleve* v. *Burkey*, 42 L. R. A., 598; *In re Gibbs' Estate*, 22 L. R. A., 281; *Stout* v. *Zooliek*, 48 N. J., 599; *Snyder* v. *Troy*, 24 Am. St. Rep., 887; *Duke* v. *Taylor*, 31 L. R. A., 484.

Argued orally by *R. F. Kimmonds*, for appellants.

CALHOON, J., delivered the opinion of the court.

We will not disturb the numerous decisions of this court holding that insolvent corporations may, in good faith, prefer creditors as individuals may. No bad faith is shown in this record. It shows merely a prefernce of the bank as creditor, and every stockholder either expressly authorized, or ratified and approved, the sale to the bank in satisfaction of the debt to it. *Sells* v. *Grocery Co.*, 72 Miss., 590. If the bank transcended its charter and loaned a larger percentage of its capital to the mercantile company than its charter authorized it to lend to any one person, that was a matter between it and the state. This could in no way prevent the collection of the debt.

The evidence shows that the debt to the bank was for loans made *boda fide* and the money used by the company to pay its mercantile debts. If fraud was practiced by the company in the use of the money borrowed, of which the proof does not show any, it could not affect the bank, which clearly was not a party to any fraud. Section 5 of the charter of the company

authorizes it to commence business " when as much as forty per cent. of the authorized capital has been actually paid in." It is shown that goods of the value of fifty per cent. of it were put in. This is enough, and, in any case, this was a matter for the state, and could not affect the rights of creditors in good faith. Nor could the fact of operation with an insufficient number of directors invalidate the claims of innocent creditors. Even if a concern should be carried on apparently as a corporation, without any charter at all, it cannot be that its creditors would be powerless to collect from it, or that it could not pay its debts. It was the business of the bank to look after its own debt, and it is not chargeable with any duty to warn others against extending credit. Because the debts of the company were largely in excess of its capital stock is no reason that the debts should be thereby avoided. Such action is the concern of the state, and cannot affect creditors except to give them the statutory right, in season, to pursue the officers and stockholders to the statutory limit. Nor can we hold if the bank did induce the stockholders to fill the vacancies in the directory in order that the board of directors might authorize a sale to it for the purpose of paying its debt, that, therefore, the sale was void. The bank, by reason of its being at the scene of action, seems to have had an advantage over the other creditors. It also seems to have used this advantage as it had the legal right to do, and, no doubt, the other creditors would have made the same use of the same advantage in collecting.

*Affirmed.*