## NEELY et al. v. RAWLINGS.
### No. 6649.

Circuit Court of Appeals, Fifth Circuit.
April 15, 1933.

Gerald FitzGerald and W. W. Venable, both of Clarksdale, Miss., for appellants.

J. L. Roberson, Sam C. Cook, and Edward C. Brewer, all of Clarksdale, Miss., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

In June, 1922, the failed Planters' Bank, a state bank, transferred to the Planters' National Bank for their fair value, its banking house and fixtures. On December 31, 1930, appellants, judgment creditors of the failed bank, brought this suit in the chancery court of Coahoma county, Miss., whence it was removed to the federal court, to declare this transfer fraudulent as to them, and to subject the property to the payment of their judgment. This judgment was obtained in 1929 in a suit begun in 1926, on a bond made in 1920. It adjudicated the liability of Tyna Neely, administratrix, the mother of complainants, and of the Planters' Bank as surety on her bond, for the dissipation by her of the assets of their father's estate. Of the complainants, two are adults, three minors.

The District Judge, finding the transfer without fraud and complainants' suit without equity, dismissed the bill. These are the facts on which he based this action. In 1922 the Planters' Bank found itself, as the result of the severe deflation of farm products and farm land values, in an insolvent condition and unable to maintain itself as a going concern. Its shareholders, having become convinced that it could not continue to do business as a bank, set on foot, with the co-operation of creditor banks holding in pledge the greater part of its bankable collateral, a plan by which a complete collapse would be prevented, the depositors saved from loss, and the banking needs of the community supplied. This plan, conceived in the utmost good faith and executed in the same way, was made effective in the following manner. The Planters' National Bank was organized with a fully paid-up capital, contributed largely by the old shareholders, though some new shareholders came in. This bank agreed, in consideration of the transfer to it of the banking house and fixtures at $79,000, their fair value, and certain other of its assets, some free and others pledged to creditor banks, all at their fair value, and other securities in the old bank but belonging to its shareholders, to assume and pay in full deposits of $2,426,748.48, being public deposits amounting to $985,587.21, and all the private deposits in the bank except $647,000, these representing the deposits of shareholders who agreed to release and surrender them. The result of this arrangement was that the new bank assumed the deposit debts of the old bank in a sum considerably in excess of the fair value of the free assets which the old bank transferred to it, and substantially in excess of the fair value of the entire assets transferred to it by the old bank. As a part of the plan for the orderly liquidation of the old bank, the creditor banks agreed that they would not press it for immediate payment of the securities they held, but that a liquidating agent should be appointed for that bank to in an orderly way, under the supervision of the chancery court realize upon its assets and distribute the proceeds to

those entitled. The shareholders of the Planters' Bank adopted all necessary resolutions approving the plan, and fully empowering their officers to carry it out. They specifically authorized the execution of all documents necessary to fully effectuate it. The resolution in terms authorized the transfer in consideration of the assumption of deposit liability, and it expressly authorized its officers to sell the banking house and fixtures for the price agreed upon, and to execute proper deed of conveyance therefor.

In addition to its approval by all the shareholders and secured creditors, the plan had the approval of the state banking department, which through its examiner joined in the deed to the bank, and of the chancery court of the county. This approval was made effective and manifested in this way.

The state banking examiner, at that time in charge for the state of the liquidation of failed banks, filed his petition in the chancery court of Coahoma county, setting out the insolvency of the bank, that it was in liquidation, and that he had appointed a liquidating agent for it, and praying that the court or the chancellor thereof in vacation assume full, complete, and exclusive control over all its properties, assets, and affairs; that it approve the appointment of the agent in liquidation, and that it make all such orders from time to time, in connection with the liquidation as may be necessary. He also filed his petition advising the court that the actual value of the unpledged assets was insufficient to pay the public deposits, and that an equitable and fair plan had been worked out by which all depositors would be paid with no substantial loss to other creditors, since but for the plan there would be no assets available to pay either depositors or other unsecured creditors. Pursuant to these petitions the court assumed "full, complete and exclusive jurisdiction of the assets, properties and affairs of the Planters' Bank," approved the appointment of the liquidating agent, approved and authorized the carrying out of the plan, and authorized and directed the examiner to join in the deed to the bank.

Appellants, proceeding on the assumption that because it was understood by all parties to the transaction that the depositors were to obtain preferential treatment over the general creditors the transaction was fraudulent in its nature, and except as the action of the bank examiner and the chancery court have given life to it, it must fail of effect, have in an elaborate series of propositions and by a minute analysis of the Code launched a vigorous and determined attack on the jurisdiction of the bank examiner and of the chancery court. They assert that prior to the adoption of the 1930 Code which makes full provision for the liquidation in chancery courts of insolvent banks (see section 3817), with express authority to that court to supervise and authorize the sale and disposition of its assets, that court, under its general jurisdiction, did not have the authority which it sought to exercise here. Appellee, on the other hand, asserts with vigor and confidence that the power exercised resided in that court because of its general equitable jurisdiction over insolvency proceedings. He cites Sunflower County v. Bank of Drew, 136 Miss. 191, 101 So. 192; Love, Supt. of Banks, v. Sunflower County (Miss.) 144 So. 856; and points to the fact that the court, in the last-cited case, declares that it was settled in Sunflower County v. Bank of Drew that the chancery court has full authority over bank liquidation proceedings, and over all the assets of failed banks.

We do not think it necessary to decide these questions as to the effect on the sale of the participation in it of the bank examiner and the chancery court, for we find the sale perfectly valid for the simple reason that there was no fraud in it. The transaction was fully authorized by the shareholders of the bank while, though insolvent, it was still a going concern, and though it was executed with the purpose and intent to prefer the depositors over other creditors, this purpose, in the absence of a statute prohibiting such transfers, did not render it ineffective. It therefore needed no validation from the banking examiner or the court, unless that which appellants point to as fraud, the deliberate purpose to prefer some creditors over others, is made fraudulent by the statutes of Mississippi or otherwise prohibited by them.

The Mississippi statute of frauds, 1930 Code, § 3344, on which appellants rely, does not prohibit them. It prohibits not preferential, but fraudulent transfers. It is the general rule, with which the decisions of Mississippi are in accord, that it is not a fraud to prefer one creditor over another where the preference is fair and in good faith. 12 R. C. L. § 91, p. 572. In Mississippi, as generally elsewhere, corporations may, though insolvent, in good faith prefer one creditor over another, and in the absence of some statute specifically prohibiting them, such transfers are valid in the hands of preferred creditors. 7 R. C. L. § 771, p. 751. Mississippi has no such statute, and if the defendant

bank, instead of being the purchaser whose money went to pay the preferred creditors, had itself been the preferred creditor, complainants could not have recovered against it. McAllister v. Houca, 71 Miss. 256, 14 So. 264; Carey-Hallidy Lumber Co. v. Cain, 70 Miss. 628, 13 So. 239; Fargason v. Oxford Merc. Co., 78 Miss. 65, 27 So. 877; Sells v. Commission Co., 72 Miss. 590, 17 So. 236. How much less may they hold the bank to pay twice, once to the preferred creditors of the old bank, and again to complainants, for property which in good faith and for fair value it bought, and in good faith paid for. This is not a case as Love Mfg. Co. v. Queen City Mfg. Co., 74 Miss. 290, 20 So. 146, 147 was, of a transfer made to prefer the directors of the corporation, or as was Delta Bank v. Oliver-Finnie Grocery Co., 70 Miss. 868, 13 So. 239, where the bank aided a debtor to make a fraudulent transfer.

■ We need not undertake to determine what the respective rights of the complainants and the defendant bank would have been if, as there is in many states, there had been a statute in Mississippi governing failed state banks, which like the federal statute, Rev. St. 5242, 12 USCA § 91, prohibits and strikes down transfers made after insolvency has supervened. McNair v. Oesterreicher, 63 F.(2d) 876; Richter v. Laredo Nat. Bank (C. C. A.) 62 F.(2d) 289. We have been pointed to no such statute; we have found none. We conclude that none exists, and it is the rule that, absent such statute, preferences by banks, when fairly made, are as unassailable as preferences by others. 3 R. C. L. § 274, p. 645. The Mississippi statute, section 34, c. 172, p. 194, Acts of 1922, providing for a sale to a new bank of all the assets of an old one, which appellants point to as striking this transfer down, has no application at all here. The new bank did not undertake to buy all the assets of the old bank; it took specific assets at a specific price, and for a specific purpose. In the last analysis what we have here is a transfer from the failed Planters' Bank to the new Planters' National Bank, in the utmost good faith and for a highly valuable consideration, that is, the payment of deposit debts of the old bank considerably in excess of the fair value of the property of that bank transferred; the assumption by the new bank of those debts, with the approval of the old bank, its secured creditors, the banking department, and the court, with provision made for a bond to secure such contingent liabilities as complainants, the faithful payment and discharge of the obligations assumed,

the entry into and the doing of business in the banking quarters which it had thus for value purchased, and dealings with it by depositors and creditors for more than eight years on the faith of its title to the property thus acquired. Deflation again has brought it, in 1931, to the condition of its predecessor in 1922. It is now a failed bank, in the hands of a receiver. To its assets, shrunken as they are, its creditors must now look for perhaps only a meager pittance on their claims. To permit complainants, who under the undisputed facts have been deprived of nothing by the arrangement, because there was no equity for the general unsecured creditors of the old bank, to now, after all these years, divert any part of the assets to which defendant's creditors are justly looking, would not be to prevent, it would be to work, a fraud.

The chancellor was right in the view he took, that there was no equity in plaintiffs' suit. His decree dismissing the bill is affirmed.