Love Manufacturing Co. et al. *v.* Queen City Manu-facturing Co. et al.

Corporations. *Assignment. Insolvency. Directors preferred.*

> While it has been decided in this state that an insolvent corporation may, in good faith, prefer creditors. yet the directors of such a corporation cannot, by their own votes and acts, prefer themselves. Whitfield, J., concurred in result, but favored overruling the cases which hold that insolvent corporation can make preferential as-signments.

From the chancery court of Lauderdale county.

Hon. W. T. Houston, Chancellor.

The Queen City Manufacturing Company, an insolvent cor-poration, executed a general assignment, by which it preferred debts due to several of the directors who were stockholders, and it also preferred debts for which two of the directors who were stockholders were bound as indorsers. The directors who were beneficiaries of the preferences voted for and caused

the assignment to be made.    They constituted a majority of the board, and these same persons controlled and voted more than half the stock in the stockholders' meeting which ordered the assignment made.    The assignee having filed his petition, under chapter 8 of the code of 1892, in the chancery court, the Love Manufacturing Company and others, creditors of the assignor, filed their cross petition assailing the assignment as fraudulent.    This pleading presented the only question decided by the court.    A demurrer thereto was sustained by the court below, and the cross petitioners appealed.

*Miller & Baskin*, for appellants.

We submit that when an insolvent corporation undertakes to make a general assignment by which it conveys all of its property to an assignee, and thereby suspends its business, or ceases to exercise its functions as a corporation, becoming practically dead, it cannot prefer its directors and officers, and that any such attempt would be violative of all the rules of law applicable to the same.    It is a nullity, and cannot be enforced. The reasons which condemn this assignment are various, some courts holding, in substance, that the fund of an insolvent corporation is a trust fund for the benefit of the general creditors of the corporation, and should, therefore, be distributed, especially in a court of equity, ratably amongst all of said creditors; other courts hold that such an assignment cannot stand, because the directors of the corporation occupy a fiduciary relation to the creditors of the corporation, and cannot obtain a preference in their behalf in dealing with the property managed and controlled by them as such fiduciaries; still other courts hold that it might be conceded that the funds of the insolvent corporation are not a trust fund in favor of the general creditors without any specific lien thereon, still, to uphold such an assignment would be violative of public policy, because of the relation of the directors to the general creditors and to the insolvent corporation.    The necessity of this limitation upon the

right to give preferences among creditors when asserted by corporations may not have been perceived in earlier times; but the growing importance and variety of modern corporations and interests, we submit, should compel its recognition and adoption.    It is immaterial that this assignment was made by authority of the stockholders, because, in this particular instance, the directors were also practically all the stockholders, and the directors procured the same to be made for the manifest purpose of being benefited themselves.

The preference to W. F. Brown for his eight hundred and sixty-five dollars, the preference to B. F. Ormond for four hundred and eighteen dollars, and the preference to Brown and Weems as indorsers on the paper of the corporation, the assignor herein, stamp the assignment as fraudulent and void *per se*. *Consolidated Tank Line Co. et al.* v. *Kansas City Varnish Co. et al.*, 45 Fed. Rep., 7, and authorities cited therein; *Corey et al.* v. *Wadsworth* (opinion of the supreme court of Alabama, rendered June 14, 1892), 11 Southern Reporter, 350; 2 Morawetz on Private Corporations, 350; *Haywood et al.* v. *Lincoln Lumber Co. et als.*, 64 Wis., 639; *Howe, Brown & Co. et al.* v. *Sanford Fork and Tool Co. et al.*, 44 Fed. Rep., 231; *Marr* v. *Bank*, 4 Cold., 476; *Hopkins' Appeal*, 90 Pa. State Rep., 76; *Ingwersen et al.* v. *Edgecombe et al.*, 60 N. W. Rep., 1032; Wait on Insolvent Corporations, sec. 162; *Olney* v. *Land Co.*, 16 Rhode Island, 597 (18 Atlantic Reporter, 181).

The sole question decided by our court in the case of *Arthur* v. *Commercial Bank*, 9 Smed. & M., 394, so far as it touches the present controversy, is that an insolvent corporation could make a preferential assignment.    There is no pretense that *Arthur* v. *The Commercial Bank* announced that an insolvent corporation could make a preferential assignment, the preferences therein given being to the directors and officers of said insolvent corporation.    No question of that kind was raised in that case.    The real question in this case, as we understand it, now submitted to this court, viz., whether or not an insolvent

corporation can make a general assignment, preferring the directors and officers of said corporation in said assignment, is *res integra* in our state, and we think that this court, in view of its oft-repeated declarations in reference to assignments, will follow the great majority of the highest courts of the states of this union in declaring that the directors and officers of a corporation will not be permitted to absorb the assets of the corporation and exclude all creditors from participating in said assets.

We respectfully call the attention of the court to the very able opinion delivered by Justice Harlan of the United States supreme court, while sitting with Jenkins, circuit judge, and Bunn, district judge of the circuit court of appeals of the seventh circuit. The opinion was rendered on the first·day of October, 1894, in the case of *Sutton Mfg. Co.* v. *Hutchinson*, as reported in 63 Federal Reporter, page 496. This opinion of Justice Harlan is not only an elaborate one, but presents, as we from our reading conclude, all the authorities both for and against the proposition involved in this case. We do not see how to escape the conclusion that the law is against the appellee in this case.

*Brame & Alexander*, on same side.

We do not rest our contention that the assignment in this case is void on the ground that there was any trust in the usual sense in which this word is understood. The leading cases relied on by us do not rest their decisions on the ground of a trust, but rather on the ground of agency, and we do not, therefore, ask the court to overrule or in any way modify its previous decisions. What we contend for is, that four out of five directors of an embarrassed corporation cannot, in an effort to secure a preference for themselves as against other creditors, postpone such creditors, and, by their own votes, execute a general voluntary assignment to one of such voting directors, giving preferences to the other three. It is a settled and uni-

versal doctrine in the law of corporations that directors cannot vote upon questions affecting their private interests.    See 1 Morawetz on Priv. Corp., sec. 517; 1 Beach on Priv. Corp., sec. 276; 1 Spelling on Priv. Corp., sec. 433; 3 Thompson Com. on Corp., sec. 4042; *Wardell* v. *Railroad Co.*, 103 U. S., 651; *Smith* v. *Los Angeles, etc., Ass'n*, 78 Cal., 289.

The courts everywhere are distinguishing between the right of directors of "going concerns," as they are called, and concerns which liquidate their own business by acts of insolvency. This distinction is not a new one in our own state's jurisprudence.    It has been recognized and applied in the law governing assignments by partnerships, and even, to some extent, to assignments by individuals.    We are not so uncandid as to say that oftentimes it is not equitably right for corporations to pay back advances made by its officers in extremities before paying other creditors, but the danger, the evils, the hardships, the fraud that lurks in the doctrine that directors and officers can prolong the life of an insolvent corporation at their pleasure and terminate it at their will, and, in the act of doing so, by their own votes reserve for their own debts the assets of the concern, are enough to cause the court to hesitate long before it will sanction such a doctrine.

The assignment is void under the authorities, and there is no decision of this court which requires that it should be upheld.    Every recent text-book on corporations which treats of this subject, lays down the rule that an insolvent corporation cannot, by a general assignment, prefer its own directors.    By far the greater number of states hold to the same doctrine.    Indeed, it is hardly supposable that all the text writers (Morawetz, Beach, Cook, and others) should agree in stating the rule to be this unless they were supported in it by the number and weight of the decisions. *Hill* v. *Pioneer Lumber Co.*, 113 N. C., 173; *Roseboom* v. *Warner*, 23 N. E. Rep., 339 (Ill.); *Bradley* v. *Farwell*, 1 Holmes, 433; *Little Rock R. R. Co.* v. *Page*, 35 Ark., 304; *Lyons-Thomas Hardware*

*Co.* v. *Perry Stove Co.*, 27 S. W. Rep., 100; *Harrigan* v. *Quay*, 26 *Ib.*, 897; *Ford* v. *Plankinton Bank*, 58 N. W. Rep., 766; *Swepson* v. *Bank*, 9 Lea, 713; 17 Am. & Eng. Enc. L., 122; also, the English case of the *Gaslight Co.* v. *Terrell*, L. R., 10 Eq., 168; *Atwater* v. *Am. Bank*, 40 Ill. App., 501; *Hill* v. *Knickerbocker Electric Light Co.*, 63 Hun, 632; *Sicardi* v. *Keystone Oil Co.*, 24 At. R., 163.

By a general assignment which does not prefer the directors, the corporations acts through its proper authorities, on the one side, and its creditors, as such, stand on the other side. It is doing what the law would do for it. But when the directors are themselves creditors, and, as directors, assign to themselves as creditors, we have the same persons acting as buyers and sellers, and it is hard to conceive of an argument in favor of tolerating a preference of a director in such case. The evil can hardly be illustrated better than in the history of this case. Brown owned $82\frac{1}{2}$ and Ormond 46 shares, out of a total of 312. They were creditors and interested to collect their debts. They get three other stockholders, one of whom, the largest stockholder, is also interested as indorser, and these stockholders called themselves together as directors. Without the vote of Brown and Ormond, there would not have been a majority of the stock. The same is true of the directors' meeting—without the vote of Brown and Ormond, there would not have been a majority. Now, the bill squarely presents the question whether a director can vote on the question of preferring his own debt. This question is squarely presented by the bill. That a director cannot do so, is well settled. 1 Morawetz on Corporations, secs. 517, 518, 520. The law must necessarily be thus, or else do violence to plain common sense of right and justice.

*McIntosh & McIntosh* and *Hamm, Witherspoon & Witherspoon*, for appellees.

Fortunately, the discussion of the question whether an insol-

vent corporation can make a general assignment with prefer-
ences, with the leading courts on the one side maintaining that
they can and the text writers on the other that they cannot,
has no place with us, for this question has long since been set-
tled in this state by our supreme court, in the case of *Arthur*
v. *The Commercial Bank*, 9 Smed. & M., 429, 430; and this
case was recently reaffirmed in the case of *Palmer* v. *Hutchin-
son Grocery Co.*, MS. op., s.c. 11 So. Rep., where Judge
Cooper says: " Counsel for the appellant concede the correct-
ness of the decree appealed from, if the question involved is to
be controlled by former decisions of this court, but argue to
show that the decision in *Arthur* v. *The Commercial Bank*,
9 Smed. & M., 394, in which it was held that an insolvent cor-
poration might make a preferential assignment for creditors
should be now overruled and the contrary view adopted.    We
decline to overrule the decision." Our court, at that early
day, after a full discussion, overruled Chancellor Buckner, and
placed its decision on the only solid and tenable ground, as it
seems to us.

To hold with the text writers that at the moment the cor-
poration becomes insolvent, its property is immediately affected
with a trust lien with all incidents of such liens, would be to
destroy the usefulness of corporations.    The public would have
to deal with them at their peril.    The moment a trading or
manufacturing corporation became insolvent, it would have to
stop any further business and close its doors, for the trustee
could not make new debts, or new engagements, or new con-
tracts, except such as were absolutely necessary to a preserva-
tion of the trust property.    This trust doctrine has had its
growth and development mainly in the minds of text writers
who viewed only one side of the question, and based their opin-
ions solely on the idea of what they believed to be public pol-
icy and honesty.    They either failed to see, or wilfully ig-
nored, the full consequences of their doctrine, and it will be
seen on examination that they use not a single argument that

would not be equally as strong and convincing against the rights of an insolvent individual to make preferences.

The true view of this question is clearly and ably set out in a recent decision of the supreme court of the United States. The effect of this opinion is to overrule a great number of decisions previously made by inferior federal courts which were based on the broad idea that all assets of an insolvent corporation were trust funds in this wide sense. *Hollins* v. *Brierfield Coal Co.*, 150 U. S. Rep., 381.

The following cases decide the direct question that insolvent corporations may prefer their directors who are *bona fide* creditors: *Planters' Bank* v. *Whittle*, 78 Va., 737; *Whitwell* v. *Warner*, 20 Vt., 425; *Buell* v. *Buckingham*, 16 Iowa, 284; *Warfield* v. *Canning Co.*, 72 Iowa, 666; *Foster* v. *Planing Mill Co.*, 92 Mo., 79; *Bank of Montreal* v. *Potts Salt Co.*, 90 Mich., 345; *Hills* v. *Furniture Co.*, 23 Fed. Rep., 434; *Smith* v. *Skeary*, 47 Conn., 54; *Central Railroad Co.* v. *Claghorn*, 1 Speers' Eq., 545; *Garrett* v. *Burlington Plow Co.*, 70 Iowa, 697; *Leavitt* v. *Mining Co.*, 3 Utah, 265; *Wilkinson* v. *Bauerle*, 7 Atl. Rep., 514; *Reichwald* v. *Commercial Hotel Co.*, 106 Ill., 439.

*Miller & Baskin* and *Cochran & Bozeman*, for appellants, in reply.

In the matter of the authorities cited by the counsel for the appellee, and relied upon as sustaining their contention that an insolvent private corporation may prefer its directors in a general assignment for the benefit of creditors, we desire to call the court's attention to the fact that nearly all of the cases cited are distinguishable from the case at bar.

In the case of *Sutton Mfg. Co.* v. *Hutchinson*, 63 Fed. Rep., 496, Justice Harlan distinguishes the cases of *Hollins* v. *Iron Co.*, 150 U. S., 371; *Buell* v. *Buckingham*, 16 Iowa, 284; *Smith* v. *Skeary*, 47 Conn., 53; *Hills* v. *Furniture Co.*, 23 Fed. Rep., 432; *Bank* v. *Potts*, 90 Mich., 345, and shows that

they do not sustain the right contended for by appellee. As the court has been referred to the *Sutton Mfg. Co. case*, we deem further comment upon the above authorities unnecessary.

We have been unable to examine Ashurst's appeal, 60 Pa., 290, cited by the counsel for appellee, but we call the court's attention to the later cases of Hopkins' appeal, 90 Pa. St., 76, and Kersteller's appeal (*Sicardi* v. *Oil Co.*), 149 Pa. St., 139, in which the supreme court of Pennsylvania holds that an officer of an insolvent corporation cannot acquire a preference over its unsecured creditors, "a correct view of the law that is promotive of justice," says the court, "and well sustained by reason and authority. If, on the discovery of insolvency of the corporation, its officers were at liberty to appropriate its entire assets in satisfaction of their demands against it, outside parties dealing with it would be entirely devoid of protection."

*Foster* v. *Planing Mills Co.*, 92 Mo., 79, involved the validity of a deed of trust executed to secure a debt due a director. It is to be noted that the deed of trust was executed in the usual course of business and for the purpose of continuing the corporate existence and business, and not by way of distribution of its assets.

So, in the case of *Bank* v. *Potts*, 90 Mich., the court says on page 349, commenting on the facts of the case, "that at the time the mortgages were given, the defendant had not ceased to be a going concern, nor are we satisfied that its officers had abandoned hope of continuing the business." And on page 351: "This mortgage cannot be held to constitute an assignment for the benefit of the creditors. It does not appear that the officers of the corporation had any purpose to make an assignment." And in *Smith* v. *Skeary*, 47 Conn., 53, the bill of sale in question was executed for a debt due and for other advances to be made in prosecution of the company's business.

The authorities, as we understand them, make a sharp distinction between the validity of mortgages and conveyances executed by the company while it is a going concern and for

the purpose of continuing its business, and those made on dissolution, holding that in many cases where the former would be sustained, the latter would be void as to creditors.

The gist of the decision in the Whitwell case, 20 Vt., 425, is, as we understand it, simply that stockholders of a corporation who take advantage of their position to secure a debt due from a corporation under an assignment, do not render themselves personally liable to the creditors of the company.

As to the case of *Sargent* v. *Webster*, 46 Am. Dec., 743 (Mass.), cited in support of appellee's view, Justice Harlan says, in 63 Fed. Rep., 506, that the later Massachusetts cases look the other way.

In *Lexington Ins. Co.* v. *Page*, 66 Am. Dec., 165, cited by appellee, the preferred creditors were shareholders and not directors, and the Kentucky court draws clearly the distinction between the relation of the shareholder, who has nothing to do with managing the business, and the director in such matters.

So in the case of *Reichwald* v. *Hotel Co.*, 106 Ill., 439, the preferred creditor was a shareholder and not a director, and the corporation was an Iowa and not an Illinois corporation. The sale complained of was made in settlement of a debt contracted and secured by a mortgage in the course of business, and while the company was a going concern.

And in *Beach* v. *Miller*, 130 Ill., 170, the court reviews the former Illinois decision on this question, and holds that a sale to a director by an insolvent corporation is void.

Argued orally by *C. H. Alexander*, for appellants, and by *W. R. Harper*, for appellees.

COOPER, C. J., delivered the opinion of the court.

The question involved in this case, as now presented, is not whether an insolvent corporation may, in good faith, prefer creditors, or whether the mere fact that two corporations, each having the same person as president of the board of directors,

and stockholders common to both, disables one to prefer the other, in good faith, as to a debt due it.   These questions have been decided in this state.   *Arthur* v. *Bank*, 9 Smed. & M., 394; *Sells* v. *Rosedale Grocery Co.*, 72 Miss., 590.   Nor is the question what preference may be given a director by a "going" corporation, not in the presence or the prospect of insolvency, or even in that condition, if in consummation of a promise made to obtain means to go on, in just and reasonable expectation of continuing operations successfully, and that if it became necessary for the protection of the creditor a prefer- ence would be given him.   Nor is it a question as to a stock- holder dealing with a corporation.   Nor is it the case of an officer who advanced money or credit to the corporation, and was preferred by others of the governing body, without his being a factor in making such preference.   Nor does the case involve the question in what sense and to what extent are cor- porate assets a trust fund in case of the insolvency of the cor- poration, nor any other of the numerous questions which might arise out of different circumstances in the dealings of corpora- tions.   The precise and only question now involved is, may the directors of an insolvent corporation prefer themselves, by de- voting its assets to pay debts due them, or debts on which they are bound as indorsers for the corporation?   This question has not been before decided in this state, and we have no hesitation to announce that this cannot be lawfully done.   To permit it would be to allow those intrusted with the governing power of a corporation to prefer themselves by their own determination and action—a proposition monstrous in the extreme, shocking to the moral sense, and wholly indefensible, as it seems to us. It is a mistake to suppose that in *Sells* v. *Rosedale Grocery Co.*, 72 Miss., 590, it was held that the directors of an insolvent corporation could lawfully devote the property of such corpora- tion to protect themselves against indorsements they had made. In that case it appears that a majority of the acting body of directors of the insolvent corporation had no interest in the

bank which was preferred, and the sole point decided, in that aspect of the case, is that the debtor company was not disabled from preferring another by the fact that one man was president of both, and that there were persons who were stockholders in both—a widely different question from that here involved. Here the preference was resolved on and made by the active and potential participation of the beneficiaries of the assignment. By their own act they appropriated for their own benefit the available assets of the corporation of which they were the governing body.

If it be conceded that a corporation in failing circumstances may do what a natural person may, it would not follow that this preference could be upheld, for it was never heard that a natural person might prefer himself by an assignment, general or special, or otherwise. He may prefer others, but not himself. These directors, by their own will and act, preferred themselves, a thing quite natural, but which the law cannot sanction. By their act they practically dissolved the corporation and put an end to its going, and appropriated its property to themselves, thereby destroying forever all chance of realization by other creditors from the continued operation of the corporation. We deem it unnecessary to cite the numerous cases which have more or less bearing on the question discussed. A large number of them have been collected and referred to in Commentaries on the Law of Corporations by Thompson (vol. 5, chap. 146) where quite a full discussion of the subject may be found, and we content ourselves with this reference.

*Decree reversed, demurrer overruled, and cause remanded, with leave to answer within thirty days after mandate filed.*

WHITFIELD, J., specially concurring.

In the result reached in the decision in this case, I entirely concur. But the expression in the opinion of the court to the effect that the question whether an insolvent corporation may

make a preferential assignment has been decided by this court, would seem to be aside from decision in this case, and, as assented to, it would seem to commit us to that doctrine still.    I write merely to say that, after the most careful investigation and the most mature consideration, I am thoroughly satisfied that all the cases in this state announcing the rule that an insolvent corporation which has ceased to be a going concern, may make, after such *de facto* dissolution, arising from its having ceased to be a going concern, a preferential assignment, should be overruled and the doctrine repudiated.    All the cases since *Arthur* v. *Bank,* 9 Smed. & M., 394, simply trace back to that; and yet, when the opinion in that case is considered, it is transparently clear that the reasoning of the opinion is meager, unsatisfactory, and unhelpful to the last degree.    That case was decided in 1848, in (as contrasted with their present development) the comparative infancy of corporations.    Fifty years of added judicial observation of the monstrous perversions of justice which constantly result from maintaining this doctrine have already had the effect of breaking most materially the then almost unanimous array of authorities upholding this pernicious doctrine; so that now, while it may be conceded that the numerical weight of authority still asserts the doctrine, an array of authorities not much less in mere number repudiate it. And when the disposition to adhere to the rule of *stare decisis* is considered, especially when the majority of the courts are to be confronted by the court taking the new view, it is not difficult to understand why courts which have (dealing with new conditions and new creations of our complex modern civilization, under the duty of pioneering their way with inadequate light) first erred should afterwards adhere to the error, seeking refuge in the fact that there have been such decisions, instead of keeping steadily in view the pole star by whose light courts should steer—the administration of justice and right— and without sufficiently remembering (what the course of enlightened jurisprudence has, through its whole history, illus-

trated) that to accomplish this fundamental purpose of the existence of courts of justice, the principles of law must be molded, in the evolution of social conditions and the development of the new agencies of civilization, so as to work out (in the exigencies confronting the courts, growing out of this development) justice and right.

I have thought it proper to observe so much, in deference to the case of *Arthur* v. *Bank, supra,* and the rule of *stare decisis;* not with any purpose of setting forth at large in this—a merely concurring opinion—the reasons which control my judgment. Those reasons may be found set out with profound ability by Judge Thompson in his recent great work on corporations (vol. 5, secs. 6494–6504, inclusive). In my judgment, this argument cannot be answered. It presents the reasoning with a force, completeness, and conclusiveness nowhere else to be found, and in sec. 6496 points out accurately the fallacy of the reasoning of courts upholding the doctrine. Says Judge Thompson: "Although an insolvent individual may turn over his property to certain of his creditors whom he desires to prefer, and may by so doing hinder and delay the others, yet he merely hinders and delays them; he does not by that act destroy himself; he still lives; and he may, and often does, get on his feet again, and acquire property, and discharge his previous obligations. But when a corporation becomes insolvent, and ceases to have the means of carrying out the objects of its creation, and dispossesses itself of all its property, it destroys itself, and becomes *ipso facto,* dissolved, and, in fact, is regarded as a dissolved corporation, for many purposes, having reference to the rights of creditors. An assignment for the benefit of creditors is, in point of fact and experience, an end of the corporation; and to this statement there is not one exception in a thousand cases, as every lawyer and judge knows. The corporation, after such a catastrophe, not only has nothing more for its unpreferred creditors, but it never will have anything more for them. Its act of exhausting its assets in pre-

ferring particular creditors, deprives the others of all remedy, unless in those cases where the law has left them the remedy of proceeding against its stockholders.   When a corporation suspends business and makes an assignment, by reason of its insolvency, its situation is analogous to that of an individual debtor under a bankrupt law, which, upon his surrendering his property for the benefit of creditors, discharges him from any further liability for his debts.   The individual is discharged *de jure* by operation of the statute of bankruptcy.   The corporation is discharged *de facto* by operation of the natural laws of its existence.   But the remedy of the creditor is not determined in the one case any more effectively than in the other.'' I refer also to the very ably-reasoned opinion in *Conover* v. *Hull*, 10 Wash., 673, s.c. 45 Am. St. Rep., 810.   It is a significant fact, too, that all the modern text writers (Morawetz, Taylor, Wait, and others) sustain Judge Thompson's view.   And Mr. Freeman, who seems not entirely content with this view, says (45 Am. St. Rep., 832): ''There can be no doubt that the doctrine that a corporation, when insolvent, cannot prefer any of its creditors, is gaining ground and finding support in the decisions of some of the courts where, until recently, there was substantial harmony'' the other way.   I confidently believe that when another decade of judicial observation of the pernicious results of this doctrine (the travesties of justice and outrages upon right flowing from its practical operation) shall have passed, the doctrine so long, so earnestly, and with such persistent faith in the ultimate triumph of principle and right, contended for by Judge Thompson, will be the established law of the land.   For the ablest argument in support of the opposite doctrine I have anywhere met with, see the opinion of McClellan, J., in *Jewelry Co.* v. *Volfer* (Ala.), 17 South., 525, the reasoning in which, however, it seems to me, breaks down just where the stress of the argument is reached.