*Reversed and remanded.*

---

ED V. PRICE & COMPANY *v.* ROUSE BROTHERS & SMITH.

[66 South. 210.]

CORPORATIONS. *Insolvency. Preference to creditors. Giving security.*

Where a corporation owning land mortgaged to a bank, conveyed it
to a director, who gave a new mortgage thereon, the proceeds
of which were paid to the bank, which released its mortgage,
in order that the new mortgage might be a first lien, it being
agreed that a second mortgage should be made for the balance

107 Miss. 50

of the original debt, and the second mortgage was not given, but to carry the debt temporarily, the corporation gave its note endorsed by the directors, and the land was later sold, the purchaser assuming the senior mortgage and giving purchase money notes for the balance, which notes were pledged as security for the corporation note held by the bank; such pledges were not fraudulent as an attempt, while insolvent, to prefer the bank as a creditor of the corporation or to relieve its directors of liability, but was merely a substantial performance of the agreement to give a second mortgage.

APPEAL from the circuit court of Pearl River county.

HON. R. E. SHEEHY, Chancellor.

Suit by Ed. V. Price & Company, and others against Rouse Brothers & Smith. From a decree for defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

*D. E. Sullivan,* for appellant.

It will be seen from the foregoing agreed statement of facts and the pleadings in this cause, that the corporation of Rouse Brothers & Smith after it ceased to be a going concern, and while it was insolvent, undertook to prefer a debt of four thousand seven hundred and ninety dollars and forty-eight cents, owing by it to the National Bank of Poplarville, evidenced by notes endorsed by the individual members of its board of directors. Of course, each director was separately liable for the entire debt of this corporation, while he has been relieved of that liability to the extent of the amount of the notes transferred by the corporation, if such transfer holds in law. The principal amount of the McCoy notes so transferred is four thousand four hundred dollars which lacks but three hundred and ninety dollars and forty eight cents of equaling the debt of the corporation of Rouse Brothers & Smith to the National Bank of Poplarville. I submit that depositing these notes as collateral to secure the debt of the corporation of Rouse Brothers & Smith to the National Bank of Poplarville, which was endorsed by the

directors of the debtor corporation while it was insolvent, is contrary to the law. This proposition is clearly settled in this state in the case of *Love Mfg. Co.* v. *Queen City Mfg. Co.*, 74 Miss. 290. I quote from the opinion of the court in this case at page 300, as follows: ''The precise and only question now involved is, may the directors of an insolvent corporation prefer themselves, by devoting its assets to pay debts due them, or debts on which they are bound as endorsers for the corporation? This question has not before been decided in this state, and we have no hesitation to announce that this cannot be lawfully done. To permit it would be to allow those intrusted with the governing power of a corporation to prefer themselves by their own determination and actions—a proposition monstrous in the extreme, shocking to the moral sense, and wholly indefensible, as it seems to us.''

The facts of the foregoing case shows that the Queen City Mfg. Company an insolvent corporation, executed a general assignment by which it preferred debts due to several of the directors, who were stockholders, and it also preferred debts for which two of the directors who were stockholders were bound as endorsers.

I quote again from the opinion in this case at page 301, as follows: ''If it be conceded that a corporation, in failing circumstances, may do what a natural person may, it would not follow that this preference could be upheld, for it was never heard that a natural person might prefer himself by an assignment, general or special, or otherwise. He may prefer others, but not himself. These directors, by their own will and act, preferred themselves, a thing quite natural, but which the law cannot sanction. By their act they practically dissolved the corporation and put an end to its going, and appropriated its property to themselves, thereby destroying forever all chance of realization of other creditors from the continued operation of the corporation.''

I do not consider it necessary to comment further on this point. It appears in the agreed statement of facts

that the National Bank of Poplarville, at one time had a trust deed on the property which was afterwards sold to McCoy, and the notes for the purchase money of which were deposited with the bank as collateral to secure the debt of the corporation which was endorsed by the corporation directors. This trust deed the bank cancelled in order that the Georgia State Savings Association might make a loan on the property secured by a first trust deed. This loan was made, and the amount, four thousand, five hundred dollars, was paid on the debt owing by the corporation to the National Bank of Poplarville. When the bank cancelled its trust deed, it took the note of the corporation endorsed by the directors, with the understanding that a second trust deed would be executed by the corporation to the Bank of Poplarville, to secure the balance of the debt after the payment of four thousand, five hundred dollars borrowed from the Georgia State Savings Association. This trust deed was never executed. However, no doubt, counsel for the National Bank of Poplarville will contend that the bank has the right to hold these notes and apply the proceeds to the payment of the debt endorsed by the directors, because of the agreement to execute a second trust deed for the bank. I do not think the bank acquired any right by such an agreement. The agreement to execute the second trust deed was not in writing and the bank could not have compelled its performance. It was void, and in violation of the statute of frauds, and surely a party to a void contract, and one in direct violation of a positive statute cannot enforce any rights under such a contract.

I submit that the chancelor erred in finding in favor of the defendant, and that the decree should be reversed and the complainants should recover from McCoy the amount of the purchase money notes, principal and interest.

*J. M. Shivers,* for appellee.

The statement of the facts as to the statute as shown by the pleadings and the agreed statement of facts are,

that the corporation of Rouse Brothers & Smith, appel-
lee here, had made no general assignment for the benefit
of their creditors at the time of the transaction complained
of here; and hence by statute all of the said corpora-
tion's property was vested in its stockholders subject to
all liens legally incurred by said corporation and to all
judgments and execution under such judgments. It is
admitted that the debt due the Bank of Poplarville was
for the purchase money for the lot and buildings de-
scribed in the bill of complaint, which deeded in trust
to the said bank, and which was thereafter deeded by the
board of directors of the corporation to H. K. Rouse in
order that he might be able to secure from the Georgia
State Building and Loan Association a part of the money
to reimburse the Bank of Poplarville to secure the bal-
ance of the debt, and in the interim to secure the bank by
the note of the corporation of Rouse Bros. & Smith en-
dorsed by H. K. Rouse, H. S. Smith, I. S. Kirkland and
J. F. Padget, all of whom were stockholders and direct-
ors of the corporation of Rouse Bros. & Smith. The sec-
ond deed in trust referred to in the agreed statement of
facts was not executed because of the sale made to Mc-
Coy, as stated. McCoy executed his notes to the Georgia
State Building Association for a part of the purchase
money for the said lot and buildings, assumed the indebt-
edness of H. K. Rouse to it, and executed his notes for the
balance of the said purchase money to H. K. Rouse, ad-
mittedly the trustee in this particular transaction for the
corporation of Rouse Bros. & Smith, which notes were
transferred to the appelee, Bank of Poplarville as collat-
eral to the note of the directors of the said Rouse Bros.
& Smith which was the lien debtor by the said Rouse as
trustee for Rouse Bros. & Smith. The question is, does
this novation of the debt, or of a part of the original debt
secured by an express lien upon real estate by a new note
of the lien debtor, or by the substitution of a note given
by the vendee of the lien debtor, discharge the lien? The

appellee, the Bank of Poplarville held a lien on the property sold to McCoy for the purchase price advanced by it to Rouse Bros. & Smith. The security followed so long as the original debt or any part of it could be traced into the notes. *Kausler, et al.* v. *James C. Ford et al.*, 47 Miss. 289.

But the learned counsel for appellant holds that taking the note of the individuals who were directors in the appellee corporation of Rouse Bros. & Smith made them liable for the entire debt which he had endorsed, and that each one has been relieved of that liability to the extent of the amount of the notes transferred by the corporation if such transfer holds in law,'' and insists that the depositing the said McCoy notes given for the purchase money of the real estate as collateral to the note of the directors, so temporarily given as stated in the agreed statement of facts is contrary to law, and cites *Love Manufacturing Co.* v. *Queen City Manufacturing Co.*, 74 Miss. 290, 20 So. 146, as authority for the proposition.

The case at bar does not come within the condemnation of the supreme court as expressed in the opinion in the case of Love Mfg. Co. in our opinion. Here was no general assignment for the benefit of creditors, here were no debts due the corporation by the directors, here was no gobbling up the assets of the corporation, here was no fact to show that the officers of the appellant corporation ''appropriated for their own benefit the available assets of the corporation of which they were the governing body.'' There was no fraud about this transaction, there are no preferential assignments of assets of the corporation to any of the endorsers of the note to the Bank of Poplarville, the bank held the property of the corporation under a deed in trust given years before by the corporation for the very money which paid for the lot on which was situated the storehouse and other buildings sold to McCoy. The said corporation had had the use and revenue of the said property until long after the note on

which was founded the deed in trust was due. The debt
of the corporation of Rouse Bros. & Smith to the Bank
of Poplarville for money advanced by the bank to Rouse,
of Poplarville, agreed to cancel its deed in trust in favor
of the Georgia Savings Association, and did so for the
purpose of benefiting the corporation, by preventing the
said property being sold at a forced sale and consequently
for less than its market value. This deed in trust being
cancelled solely that the corporation might secure the said
sum of four thousand, five hundred dollars, with the ex-
press agreement that the corporation should execute and
deliver to the Bank of Poplarville a·second deed in trust
to secure the payment of the balance due at the time
when this deed should have been executed and delivered
as per agreement, when the bank had performed its part
of the agreement by cancelling its deed in trust, it ap-
peared that a sale might be made in a very short time, and
the matter settled satisfactorily, without a new deed in
trust. So, then, the matter was arranged for the interim,
by the note endorsed by individuals who were directors of
the corporation, as they hoped to the interest of the cor-
poration, their minds being untainted by the idea of fraud
or of personal benefits. But, alas for human foresight;
they forgot human greed, the prejudice against ''soul-
less corporation,'' which still clogs the progress of this
age—forgot perhaps that there were legions of legal
lights which must be kept trimmed and burning, and soon
like the storied fish found that they had leaped from the
·frying pan of financial trouble into the fire of litigation.

This agreement as to the execution of the deed in trust
not being in writing is characterized by the learned coun-
sel for appellants, as being void, and the bank could not
compel its performance. The agreement was valid and
binding. It was a trust valid and binding. The statute
does not embrace trusts. *Runnells* v. *Jackson,* 1 Howard,
358; *Evans* v. *Green,* 23 Miss. 295; *Jones* v. *McDougal,* 32
Miss. 179; *Sells* v. *Grocery Co.,* 72 Miss. 590, 17 So. 236.

*Tally & Mayson,* for appellee.

We submit that the court below reached the only conclusion warranted by the law and the facts in this case. That the corporation originally owed the appellee, bank, eight thousand dollars for money loaned with which to buy the storehouse cannot be denied and is in fact admitted. The transfer of the property to Rouse was for the express purpose of enabling Rouse Bros. and Smith to get a loan on the property to reduce its indebtedness to the bank. The money loaned the corporation by the loan association only amounted to about one-half of the debt originally owing the appellee bank. The deed of trust held by the bank was to be cancelled and a second one executed in its favor, but it was never done. Opposite counsel says that this agreement was void because not reduced to writing; but whether void or not it is not material as we will later undertake to demonstrate. When McCoy purchased the property, the debt to the loan company was not extinguished; he assumed that. The balance due the bank on the original indebtedness had not been paid; he assumed that, giving his notes therefor which were endorsed by the officers of the corporation. And because these notes executed by McCoy for the indebtedness originally owing the bank were endorsed by the officers of Rouse Bros. & Smith, the contention is advanced that the transaction was fraudulent and void and the bank must forsooth lose its debt. We contend that such a proposition is wholly without merit and cannot be maintained.

In so far as the records show, the bank was the first creditor of Rouse Bros. & Smith. Certainly it is true that no one of the appellants ever furnished any part of the money to buy the storehouse and lot. It makes no difference how many changes there might have been in the mere form of the debt due the bank, the fact remains that the evidence thereof represents the money originally loaned Rouse Bros. & Smith. The debt is the matter and

thing to be considered and not the manner in which it is evidenced. Appellants are not deprived of a single right, legal or equitable, by the stockholder's endorsement of the McCoy notes. If they have any rights which they can invoke against the endorsers of the note, the most that they could ask would be to compel the bank to first seek satisfaction out of McCoy individually or resort to the security, to wit: The property conveyed him as evidenced by his notes. We stated that it was immaterial whether or not it was understood and agreed that the bank should have a second deed of trust when the one was executed in favor of the loan company. If the agreement was not consummated, as appears from the record, then the cancellation of the first one had the effect only, or subordinating it to that one executed in favor of the loan company. That equity will keep alive or extinguish an instrument as will best subserve the purpose of justice is a proposition unanimously assented to in all courts. *Howell* v. *Bush,* 54 Miss. 437; *Sansler* v. *Sallis,* 54 Id. 446; *Young* v. *Skiner,* 5 Am. St. Rep. 701; Pom. Eq. Jurs., sec. 791.

The proposition is elementary that equity looks to the intent rather than to the form of a transaction. While we have no complaint to make of the principal enunciated in *Love Mfg. Co.* v. *Queen City Co.,* 74 Miss. 290. We insist that the doctrine there promulgated is not applicable to the case under consideration. It will be observed that the Queen City Mfg. Company undertook to make a general assignment in favor of all its creditors that while the assignment purported, on its face, to be a general one, as provided by chapter 8, Code 1906, it was nevertheless a preferential one because a larger portion of the schedule indebtedness was either debts owing to the stockholders of the assignor corporation or debts which the corporation had contracted for their special benefit. The fact that the creditors were not to be paid out of the funds *pari passu,* but that the stockholders and not creditors

of the corporation were preferred, nullified its effect as a general assignment. Of course, where a corporation or an individual makes a general assignment, pursuant to the code chapter all creditors must be treated alike, but there is no pretense here that this corporation ever undertook to make a general assignment in favor of its creditors. It has been the law from a very early date in this state that a debtor in failing circumstances has a right to prefer certain creditors, and which rule has never been departed from so far as our researches extend, but this is not the case of a debtor in failing circumstances undertaking to prefer creditors, but it is the case of a creditor to whom the corporation owes a debt from the time of its inception and has held security for that debt seeking to secure a satisfaction out of the securities that were originally executed to grantee as a satisfaction on the debt. The appellee, bank, is not now nor never was a stockholder of the corporation of Rouse Bros. & Smith. It seeks not to divest appellant of any right, nor to overreach them in any respect; it merely asks that it be reimbursed for money loaned Rouse Bros. & Smith since it engaged in business. It has neither desire nor inclination to prevent appellant from collecting of Rouse Bros. & Smith, its shareholders or directors, any debt they may owe them, but it does insist that it would not only be inequitable but an absolute perversion of justice to declare its debt contraband.

Long before, as the records show, the debt of the appellants was contracted, the property had been conveyed to Rouse for the purpose of enabling the corporation to secure funds. A prospective creditor of the corporation then, in examining the public records, would naturally draw the conclusion that the storehouse was the individual property of Rouse. We merely call the court's attention to this to show these appellants did not and could not regard the storehouse as an asset of the corporation as a basis upon which to extend it credit. The only legitimate

complaint that appellants could urge against the endorsement of the notes by the officers of Rouse Bros. & Smith is that the appellee bank might undertake to enforce a personal liability against them and thereby diminish their ability to respond to them, the appellants. The bill makes no such averment, but on the contrary, its charge would seem to support the conclusion that the directors are personally liable to appellants. In short, appellee's contention is that the bank is entitled as of right to have McCoy pay it the balance due it on the purchase money for the sale of the building. It is true the form of indebtedness has changed to some extent, but the debt is the principal thing to be considered, and if the debt as originally constracted is still owing the bank, a proposition about which there is no contention, then the bank has the right to have McCoy pay to it the balance he is due on the building or at least pay to it the amount of the purchase money that is still due and owing.

Cook, J., delivered the opinion of the court.

The bill of complaint filed in this case, together with the amendments thereto and the orders of the court permitting creditors of Rouse Bros. & Smith, a mercantile corporation, to join in the litigation, was, in effect, a creditor's bill to have certain collateral notes assigned to the Bank of Poplarville, and described in the agreed statement of facts, declared general assets of the said insolvent incorporation. It was contended by complainant that the assignment of the notes to the Bank of Poplarville was to all intents and purposes a preference of the directors by themselves, condemned by this court in *Love Mfg. Co.* v. *Queen City Mfg. Co.,* 74 Miss. 290, 20 So. 146.

The cause was submitted to the court upon an agreed statement of facts, and we here copy same, viz.:

"Rouse Bros. & Smith bought block 10, fully described in the bill, for eight thousand dollars, in 1905, and paid

about five hundred dollars in cash of the purchase price, and executed a deed of trust on the property to the Citizens' Bank of Poplarville for the balance of the purchase money, being about seven thousand, five hundred dollars, and paid this amount over to the vendors. This deed of trust was executed the day Rouse Bros. & Smith bought the property. Afterwards, on the 29th day of January, 1907 Rouse Bros. & Smith borrowed seven thousand dollars from the Bank of Poplarville to take up the trust deed of the Citizens' Bank. On the —— day of September, 1907, the corporation of Rouse Bros. & Smith conveyed the property, block 10 as described in the bill, to H. K. Rouse, pursuant to a resolution of the board of directors reciting a consideration of one hundred dollars. On the 24th day of September, 1907, H. K. Rouse and his wife executed a deed of trust on that property to the Georgia State Building & Loan Association for a loan of four thousand, five hundred dollars. This sum was applied to the payment of the mortgage on this same property held by the Bank of Poplarville, on the 19th day of January, 1908, and the Bank of Poplarville then canceled its trust deed on this property, leaving the Georgia State Building & Loan Association holding a prior lien. On the date of the payment of the four thousand, five hundred dollars to the Bank of Poplarville, Rouse Bros. & Smith, corporation, executed its note to the Bank of Poplarville, indorsed by its board of directors, for the balance owing said bank after the application of the four thousand, five hundred dollars to its debts, which balance had been secured as aforesaid by a mortgage on this property. The Bank of Poplarville held this note, inodrsed by the board of directors of Rouse Bros. & Smith, until the —— day of August, 1909, when H. K. Rouse sold and conveyed the property (block 10 as fully described in the bill) to M. N. McCoy for eight thousand dollars, McCoy agreeing to assume the balance due the Georgia State Building & Loan Association secured by

trust deed, and paid to H. K. Rouse sixty-five dollars in cash, and executed his promissory notes for the balance of the purchase price, as follows, to wit: One note for one thousand dollars, due September 1, 1910; one note for one thousand, seven hundred dollars, due September 1, 1911; and one note for one thousand, seven hundred dollars, due September 1, 1912. That H. K. Rouse deposited the purchase-money notes of McCoy with the Bank of Poplarville to secure the balance owing that bank, for which it had taken the note of Rouse Bros. & Smith, indorsed by the board of directors, when it canceled its lien on the property, said note being renewed by Rouse Bros. & Smith and indorsed by the board of directors, and the purchase-money notes of McCoy held as collateral security. This note has not been paid; neither has the collateral, consisting of the purchase-money notes executed by McCoy.

"When Rouse Bros. & Smith, corporation, conveyed block 10 to H. K. Rouse, it was for the purpose of executing a mortgage or trust deed on the property and borrowing four thousand, five hundred dollars from the Georgia State Building & Loan Association, the proceeds of which were to be applied to the payment of the debt owing the Bank of Poplarville, which debt was secured by a mortgage on this property. When Rouse took the title from Rouse Bros. & Smith to the block of land and storehouses in question, he was the trustee of the corporation, and held the title for the benefit of the corporation, and sold it for the corporation when he sold it to M. N. McCoy and took the purchase-money notes from M. N. McCoy to pay the debts of the corporation and used the notes as aforesaid.

"That at the time the Bank of Poplarville canceled its mortgage on the property and accepted the note secured by indorsement of the said board of directors, it was orally agreed that a second mortgage should be executed to said bank on said property to secure said bal-

ance; that a second mortgage was drawn up by the attorneys of the Bank of Poplarville, but afterwards an opportunity was secured to dispose of the said property to M. N. McCoy, and said notes were deposited with the bank as collateral, instead of said second mortgage being executed. While complainant's counsel admit the truth of the statement with reference to the second mortgage to be taken by the Bank of Poplarville, they reserve the right to object to the same for irrelevancy and incompetency.

"All the exhibits referred to in the bill of complainant and the several answers thereto are considered as introduced and read in evidence at the trial of the cause. All the pleadings, exhibits, records and judgments in the suits by the several creditors against Rouse Bros. & Smith in the courts referred to or mentioned in the bill of complainant are considered, introduced, and read in evidence at the trial of the case and may be referred to.

"The names of directors who indorsed the note of Rouse Bros. & Smith to the Bank of Poplarville are as follows: H. K. Rouse, H. S. Smith, I. S. Kirkland, J. F. Padget. Some of these directors were solvent when they signed said note and renewal, and still are solvent. The corporation of Rouse Bros. & Smith had ceased to be a going concern when the notes of M. N. McCoy for the purchase-money of block 10 were placed with the Bank of Poplarville as collateral, which fact the Bank of Poplarville knew to be true, and said corporation was then insolvent. M. N. McCoy knew nothing about the terms and conditions of the transfer of Rouse Bros. & Smith to H. K. Rouse when he bought the property from H. K. Rouse. It is agreed that H. K. Rouse would testify, if on the stand, that Exhibit A to this agreement is correct, and that he collected of the corporation's money, before the appointment of a receiver one thousand, two dollars and eighty-five cents, and paid on the debts of the corporation of Rouse Bros. & Smith five thousand, five

hundred, twenty-six dollars and seventy-four cents, as shown by Exhibit A hereto.  This does not include notes for purchase money of stock of goods which were delivered to Marks, Rothenburg & Co., creditors of Rouse Bros. & Smith.  It is agreed that J. F. Williams, attorney, handled the claims of Owensboro Buggy Company, Louis P. Rice & Co., and Ed. V. Price & Co., and that he knows nothing about the alleged payments to the above-named firms.  Complainants reserve the right to object to this statement as incompetent.''

We are unable to see any fraud on the part of the mercantile corporation, its directors, or the Bank of Poplarville.  It seems clear that it was the understanding when the bank canceled its mortgage it was to enable this mercantile corporation to borrow money from the Georgia Savings Association.  It is not disputed that, when this transaction was agreed upon, it was also agreed that a second mortgage would be executed in favor of the bank. For some unexplained reason the mercantile corporation did not carry out this part of the contract.  It appears, however, that within a few months the real estate was sold at a satisfactory price, and in the transfer of the purchase-money notes the directors of the Rouse Bros. & Smith Company merely made good the agreement that the bank was to enjoy the preference over other creditors than the Georgia Savings Association so far as this real estate was concerned.

We cannot see that this transaction was an effort of the directors to prefer themselves; but, on the contrary, it seems to have been the delayed performance of an admitted obligation.

We believe that the learned chancellor was correct in his conclusions, and the case is therefore affirmed.

*Affirmed.*